**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOIS E. ORDLOCK,
                    *Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
                    *Respondent-Appellee.*

No. 06-74539

Tax Ct. No.
17021-02

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
April 9, 2008—Pasadena, California

Filed July 24, 2008

Before: Harry Pregerson, Dorothy W. Nelson, and
Ferdinand F. Fernandez, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Clayton J. Vreeland, Vreeland Law Firm, Inc., Los Angeles, California, for the petitioner-appellant.

Teresa E. McLaughlin and Rachel I. Wollitzer, Tax Division, United States Department of Justice, Washington, D.C., for the respondent-appellee.

## OPINION

PREGERSON, Circuit Judge:

Lois E. Ordlock appeals the Tax Court's determination that she is ineligible for a refund under 26 U.S.C. § 6015[1] for payments on her husband's tax debt paid from their community property. After reviewing the language and legislative history of § 6015, we affirm the decision of the Tax Court.

## BACKGROUND

Lois Ordlock and her husband, Bayard M. Ordlock, live in California, a community property state. The Ordlocks filed joint federal income tax returns in California for the years 1982, 1983, and 1984. Because all three returns understated the Ordlocks' tax liabilities, the Commissioner of the Internal Revenue Service made several assessments of additional amounts of tax, penalties, and interest owed by the Ordlocks for those three years.

Over the next two decades, the Ordlocks made several payments on the tax debt. Except for one payment of $2,485 made from Mrs. Ordlock's separate property,[2] all payments and credits applied to the couple's tax debt were made from community property.[3] The Ordlocks remained married at the time all payments were made, and are still married today.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (26 U.S.C.).

[2]*See* Cal. Fam. Code § 770(a) ("Separate property of a married person includes all of the following: (1) All property owned by the person before marriage; (2) All property acquired by the person after marriage by gift, bequest, devise, or descent; (3) The rents, issues, and profits of the property described in this section.").

[3]*See* Cal. Fam. Code § 760 ("Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property.").

On March 4, 1999, Mrs. Ordlock filed a request under § 6015(b) for "innocent spouse" relief from joint and several liability on the tax debt for the years 1982, 1983, and 1984. On July 26, 2002, the Commissioner mailed Mrs. Ordlock a Notice of Determination that granted her relief under § 6015(b) of $160,912 for all three years. In relevant part, the Notice stated:

> Subject: Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015.
>
> Dear Mrs. Ordlock:
>
> We've made a decision about your appeal request for innocent spouse relief . . . .
>
> We call the decision we made a determination. When we abate a tax or penalties or interest we call it relief from the liability. . . .
>
> Internal Revenue Code Section 6015 allows us to abate in full or in part a tax liability when we determine that someone qualifies as an innocent-spouse.
>
> We've determined, for the above tax year(s), that:
>
> We find you eligible for relief under Section 6015(b) in the amount of $160,912.00.

The Notice further indicated that Mrs. Ordlock's remaining tax liability for 1982, 1983, and 1984 was zero. The Notice did not address whether Mrs. Ordlock was eligible for any refund of the amount that she previously paid.

Mrs. Ordlock sought review of the Notice, and the parties eventually decided to submit the case for decision to the Tax Court. The parties agreed that Mrs. Ordlock was entitled to

relief from joint and several liability under § 6015(b) for the years 1982, 1983, and 1984. The parties also agreed that Mrs. Ordlock was entitled to a refund of $2,485 for the payment on the tax debt that she made with her separate property. Their dispute centered on whether Mrs. Ordlock was entitled to a refund of the payments the Ordlocks made from community property. Mrs. Ordlock argued that § 6015 requires the payments she made from community property to be allocated between herself and her husband, despite the continued existence of the marital community. The Commissioner argued that § 6015 does not preempt community property law for purposes of calculating refunds.

On January 19, 2006, the Tax Court issued its opinion in favor of the Commissioner. *Ordlock v. Comm'r*, 126 T.C. 47 (2006). On June 20, 2006, the Tax Court entered its final decision, incorporating its January opinion. On September 11, 2006, Mrs. Ordlock filed her timely notice of appeal to this court. *See* § 7483.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over all final decisions of the Tax Court under § 7482(a)(1). We review the Tax Court's interpretation of the tax code de novo. *Biehl v. Comm'r*, 351 F.3d 982, 985 (9th Cir. 2003).

### I.  Federal Income Tax Law and California Community Property Law

Married couples who file joint returns are generally jointly and severally liable for the full amount of tax due on their combined incomes, even though one spouse may have earned more than the other. *See* § 6013(d)(3); *Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992). Married couples may avoid joint liability by filing separate returns and paying tax at the rates applicable to married persons filing separate returns. § 1(d).

Under § 6321, if a taxpayer does not pay an assessed tax after a notice and demand, a lien in favor of the United States in the amount of the delinquency arises "upon all property and rights to property, whether real or personal" belonging to the taxpayer. *E.g.*, *United States v. Craft*, 535 U.S. 274, 276 (2002). It is well established that state law controls the determination of the nature of the legal interest the taxpayer has in property for purposes of § 6321. *In re McIntyre*, 222 F.3d 655, 658 (9th Cir. 2000).

In California, all property acquired by a married person during the marriage is generally considered community property. *See* Cal. Fam. Code § 760. Under § 910(a) of the California Family Code, community property is liable not only for the joint debts of the couple, but also for the separate liabilities of one spouse:

> Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.

This state law reflects the principle articulated by the California Supreme Court that "the policy of protecting the . . . creditors [of a spouse] outweighs the policy of protecting family income . . . ." *Babb v. Schmidt*, 496 F.2d 957, 959 (9th Cir. 1974) (quoting *Weinberg v. Weinberg*, 432 P.2d 709, 711 (Cal. 1967)).

## II.   Innocent Spouse Relief

[1] Because § 6013(d) makes individuals who file joint tax returns strictly liable for the income tax debts of their spouses, Congress has long provided limited "innocent spouse" relief

for certain spouses who are jointly and severally liable for tax liability stemming from a joint return.

Congress first provided "innocent spouse" relief in § 6013(e) of the 1954 Code, which was enacted in 1971. *See* Act of January 12, 1971, Pub. L. No. 91-679, § 1, 84 Stat. 2063 (1971). In 1998, Congress repealed § 6013(e) and replaced it with § 6015, which provides expanded forms of innocent spouse relief. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub L. No. 105-206, § 3201, 112 Stat. 685, 740 (1998) ("the 1998 Act"). Section 6015 replaced § 6013(e) for any liability for tax arising after July 22, 1998 and for any liability for tax remaining unpaid as of that date.[4]

To qualify for innocent spouse relief, the taxpayer must show that the couple filed a joint return, that the return contained an understatement attributable to "erroneous items" of the other spouse, and that in signing the return, the "innocent spouse" did not know or have reason to know of the understatement. *See* § 6015(b).[5] The taxpayer must also show it would be inequitable to hold her liable. § 6015(b)(1)(D).

**[2]** A taxpayer can qualify for innocent spouse relief under one of three provisions of § 6015: § (b), § (c), or § (f). Section 6015(b) is available to all joint filers. Section 6015(c) applies

---

[4]Although the liability in this case arose prior to enactment of § 6015, § 6015 applies here because the liability remained unpaid on the date of enactment.

[5]The 1971 version of the statute listed very similar criteria. In fact, the only significant difference between the 1971 version and the 1998 version is that the 1998 version eliminates the requirement that the understatement be "substantial." *See Guth v. Comm'r*, 897 F.2d 441, 443 (9th Cir. 1990) (finding under the 1971 Act that "[t]he taxpayer must show that the couple filed a joint return, that the return contained a substantial tax understatement attributable to the other spouse's errors, and that in signing the return, the 'innocent spouse' did not know or have reason to know of the substantial understatement").

only to those taxpayers who are no longer married, legally separated, or not living together. Section 6015(f) provides for selective equitable relief for those taxpayers who do not meet the requirements of § (b) or § (c).

If a taxpayer is found eligible for innocent spouse relief, the taxpayer may then seek a refund for any payments that the taxpayer made on the non-innocent spouse's tax debt. *See* § 6015(g).[6]

## III.   Rules of Statutory Construction

**[3]** Whether § 6015 preempts community property law for purposes of calculating innocent spouse refunds is an issue of first impression that depends upon statutory construction.

The "starting point in every case involving construction of a statute is the language itself." *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330 (1978) (internal quotation marks omitted). "In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) (quotation marks and brackets omitted). Where the words of a statute are not conclusive as to congressional intent, they should be placed in their proper context by resort to legislative history. *League to Save Lake Tahoe, Inc. v. Trounday*, 598 F.2d 1164, 1172 (9th Cir. 1979).

---

[6]Section 6015(g) was not enacted until 2000. It replaced the language regarding refunds from § 6015(e)(3) of the 1998 Act, as amended. *See* Community Renewal Tax Relief Act of 2000, Pub. L. No. 106-554, 114 Stat. 2763.

As the original House report explains, the refund provision allows the court to "order refunds as appropriate where it determines the spouse qualifies for relief and an overpayment exists as a result of the innocent spouse qualifying for such relief." H.R. Rep. No. 105-364 (Pt. 1), at 61 (1997). This language demonstrates that the authority to issue a refund flows from the determination of relief from joint and several liability.

"Because domestic relations are preeminently matters of state law . . . Congress, when it passes general legislation, rarely intends to displace statutory authority in this area." *Mansell v. Mansell*, 490 U.S. 581, 587 (1989). Moreover, the Supreme Court has held that federal law supplants community property law only where the congressional intent to accomplish such a result is clear and unequivocal. *See id.*; *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979).

## IV.    Statutory Analysis

[4] The question before us is whether Congress, in enacting § 6015, intended to preempt California community property law with respect to an innocent spouse's right to a refund. The answer depends on our interpretation of certain language in § 6015(a) and § 6015(g), the refund provision. We address each section in turn.

## A.    Section 6015(a)

[5] Section 6015(a) provides:

(a) In general.—Notwithstanding § 6013(d)(3)—

> (1) an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b); and

> (2) if such individual is eligible to elect the application of subsection (c), such individual may, in addition to any election under paragraph (1), elect to limit such individual's liability for any deficiency with respect to such joint return in the manner prescribed under subsection (c).

*Any determination under this section shall be made without regard to community property laws.*

(Emphasis added.)

Mrs. Ordlock argues that the final sentence of § 6015(a) is comprehensive and applies to all sections of § 6015, including § 6015(g). She contends that this broad statement demonstrates Congress's clear intent to preempt community property law for the purpose of calculating refunds.

The Commissioner argues that the final sentence of § 6015(a) does not demonstrate Congress's intent to preempt community property law with respect to *all* subsections of § 6015. Rather, Congress intended that the final sentence of § 6015(a) apply only to *determinations* made under § 6015. According to the Commissioner, the plain language of § 6015(a) indicates that the only "determination" within the meaning of § 6015 is the initial decision that a taxpayer is an innocent spouse. Whether that innocent spouse is then eligible for a refund, however, is a separate question governed by the applicable law of the state in which that spouse resides. In other words, the allowance of a refund is not a determination, and thus is not affected by the directive found in § 6015(a) to disregard community property laws.

We agree with the Commissioner.

[6] First, the root word "determine" (or some conjugation of it) appears five times in § 6015.[7] In each instance, it is used

---

[7]It appears four times in § 6015(e) and once in § 6015(g)(2). In § 6015(e), which governs petitions for review by the Tax Court of determinations of relief from joint and several liability, the word "determination" is used three times to refer to the IRS's determination (or final determination) of relief. *See* §§ 6015(e)(1)(A)(i)(I); 6015(e)(5) (twice). The word "determine" is also used in § 6015(e) in granting the Tax Court jurisdiction to review the IRS's determination of relief. *See* § 6015(e)(1)(A).

"Determine" is used one last time, in § 6015(g)(2). That provision, however, merely addresses the res judicata effect of prior proceedings for innocent spouse relief from joint and several liability — which turns in part on whether the Tax Court "determines" that the individual participated meaningfully in the prior proceeding. *See* § 6015(g)(2).

to refer to the Commissioner's decision that the petitioning spouse is an innocent spouse who is eligible for some degree of relief from joint and several tax liability. Thus, it appears that this decision is the "determination" that the final sentence of § 6015(a) contemplates should be made "without regard to community property laws."

By contrast, the word "determine" is absent from § 6015(g)(1), the refund provision of the statute. Instead, § 6015(g)(1) states that any "credit or refund shall be *allowed or made* to the extent attributable to the application of this section." (emphasis added). This is a significant distinction. *See Huffman v. Comm'r*, 978 F.2d 1139, 1145 (9th Cir. 1992) ("Words with a fixed legal or judicially settled meaning, where the context so requires, must be presumed to have been used in that sense."). Presumably, if Congress had intended the final sentence of § 6015(a) to preempt community property laws with respect to the issuance of a refund, it would have clarified that the decision to make such an issuance was a "determination" within the meaning of the statute.[8]

We find that the text of the statute provides, at the very least, some indication that Congress used the word "determination" in the final sentence of § 6015(a) to refer only to the Commissioner's decision regarding relief from joint and several liability.

We also find that the legislative history of the statute supports this interpretation.

---

[8]And, as Tax Court Judge Thornton explained in his concurrence, the allowance of a refund or credit is not technically "determined" under § 6015; it is decided under §§ 6401 and 6402, which govern overpayments. *See Ordlock*, 126 T.C. at 69-71.

Moreover, the Notice of Determination issued to Mrs. Ordlock provides additional evidence that the IRS uses the word "determination" as a term of art in the innocent spouse context. The Notice of Determination explicitly states that the decision regarding eligibility for innocent spouse status is called a determination.

From the time of the first enactment of "innocent spouse" relief under § 6013(e) in 1971, there was language that pre-empted the operation of community property law, but only for the limited purpose of "the determination of the spouse to whom such items of gross income . . . are attributable."[9] This makes sense: because community property law contemplates that property acquired by the couple during marriage belongs to the marital *community*, the IRS must ignore community property law when deciding whether the "items" listed on the couple's tax return are the responsibility of an *individual* spouse. Thus, the "determination" long required by § 6013(e) suspended community property law solely for purposes of determining which spouse was responsible for the "item" on the federal income tax return that gave rise to the tax liability.[10]

The final sentence of § 6015(a) did not appear in the statute until Congress passed the 1998 Act, expanding the availability of innocent spouse relief. To understand why Congress replaced the old language with the new, we turn to the House and Senate bills.

The House bill would have liberalized the availability of innocent spouse relief by repealing understatement thresholds and by making relief available and apportionable to the extent that the spouse lacked knowledge or reason to know about the understatement. Notably, the House bill would have carried forward the old language of § 6013(e) providing that "the determination of the spouse to whom items of gross income (other than gross income from property) are attributable shall be made without regard to community property laws." H.R. Rep. No. 105-364 (Pt. 1), at 19.

---

[9]This language, first placed in § 6013(e)(2)(a) by the 1971 Act, see 84 Stat. 2063, was moved to 6013(e)(5) as part of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 424, 98 Stat. 494, 801-02.

[10]Mrs. Ordlock asserts that, under the prior version of the statute, the Commissioner would issue community property refunds for tax overpayments to California innocent spouses. We have found no authority supporting that assertion.

Like the House bill, the Senate bill was designed to make innocent spouse relief more widely available. The Senate, however, proposed two completely new approaches for expanding relief. First, the Senate bill would have allowed certain spouses to elect "separate liability relief," which, in essence, would retroactively place the spouses on a separate-return footing. Under this form of relief, detailed rules and regulations were required to allocate almost *all* items on the tax return between the spouses. Second, the Senate bill contained a limited form of equitable relief. H.R. 2676, § 3201(a), as amended and passed by the Senate on May 7, 1998, *reprinted in* 144 Cong. Rec. S8620 (1998).

The Senate's proposal to allow separate-liability elections introduced additional complexity into the process of allocating items between spouses. Accordingly, because there were more scenarios in which the IRS would have to label an item on a tax return as belonging to an individual spouse instead of the "community," there were more instances in which the IRS would have to disregard community property laws. As a result, broader language was required than was found in the House bill, which preempted community property laws only for purposes of allocating gross income between spouses. Accordingly, the Senate bill included the language now found in the final sentence of § 6015(a).

When the differences between the House and Senate bills were reconciled in conference, the final version included the House's provision for greater *general* innocent spouse relief (§ 6015(b)), the Senate's provision for *separate liability* relief (§ 6015(c)), and the Senate's provision for *equitable* relief (§ 6015(f)). Because the Senate's provisions for separate liability and equitable relief survived conference, the broad language of § 6015(a) also made it into the final version of the statute.

This history strongly suggests that the final sentence of § 6015(a) was drafted to account for the expanded means of

allocating items between spouses to determine eligibility for innocent spouse relief — *not* to expand the preemption of community property laws to the issuance of refunds. Significantly, nothing in the legislative reports suggests that Congress intended to set aside state law ownership interests in property for refund purposes. To the contrary, the Senate report makes it clear that community property law was to be preempted only in the context of allocating items between spouses so as to place them on a separate return basis. *See* S. Rep. No. 105-174, at 56, 57 (1998) (defining the scope of the preemption of community property laws as applicable with respect to "[t]he allocation of items"). Similarly, the Conference report does not acknowledge any difference between the House and Senate bills regarding the suspension of community property laws.

**[7]** In conclusion, after considering the disputed language in the context of the statute as a whole, we hold that the final sentence of § 6015(a) does not preempt community property law for purposes of the issuance of innocent spouse refunds.

## B.   Section 6015(g)

**[8]** Mrs. Ordlock also relies on § 6015(g), the refund provision itself, as evidence that Congress intended to preempt California community property law with respect to the issuance of refunds. Section 6015(g) provides:

> (g)   Credits and refunds.—
>
>> (1) In general.—Except as provided in paragraphs (2) and (3), *notwithstanding any other law or rule of law (other than sections 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.*

(2) Res judicata.—In the case of any election under subsection (b) or (c) or of any request for equitable relief under subsection (f), if a decision of a court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except with respect to the qualification of the individual for relief which was not an issue in such proceeding. The exception contained in the preceding sentence shall not apply if the court determines that the individual participated meaningfully in such prior proceeding.

(3) Credit and refund not allowed under subsection (c).—No credit or refund shall be allowed as a result of an election under subsection (c).

(Emphasis added.)

Mrs. Ordlock argues that the "notwithstanding any other rule of law" language means that state community property laws should be disregarded in calculating the proper refund. The Commissioner argues that Mrs. Ordlock's interpretation ignores both common sense and the context of the statute. Again, we agree with the Commissioner.

**[9]** First, we turn to the disputed language. Although sections of a statute generally should be read to give effect, if possible, to every clause, we have previously stated that the phrase "notwithstanding any other law or rule of law" should not always be read literally. *See*, *e.g.*, *Or. Natural Res. Council v. Thomas*, 92 F.3d 792, 796-97 (9th Cir. 1996); *E.P. Paup Co. v. Director, OWCP*, 999 F.2d 1341, 1348 (9th Cir. 1993); *Kee Leasing Co. v. McGahan (In re Glacier Bay)*, 944 F.2d 577, 582 (9th Cir. 1991). Here, construing the "notwithstanding" phrase of § 6015(g) as a broad preemption clause would

mean that all state property laws in community property states *and* common law states should be ignored in calculating refunds. Moreover, as the Tax Court majority noted, "[e]ven if limited to community property provisions, [Mrs. Ordlock's] position leaves us with no law or resource to define the ownership of the payments made . . . on the tax liabilities for the years at issue." 126 T.C. at 56.

Because it is unlikely that Congress intended the "notwithstanding any other rule law of law" phrase to be a broad, catch-all preemption clause, we examine its context and its history of the phrase to derive its meaning.

First, we note that the "notwithstanding" phrase does not appear in isolation. Rather, it is qualified by a parenthetical: "notwithstanding any other law or rule of law *(other than sections 6511, 6512(b), 7121, or 7122)* . . . ." § 6015(g)(1) (emphasis added). Accordingly, the "notwithstanding phrase" is subject to certain exceptions, we examine those exceptions to see if we can carve out the "general." Sections 6511 and 6512 pertain to statutes of limitations on the allowance of a credit or refund. *See* §§ 6511 & 6512(b). Sections 7121 and 7122 establish the finality of closing agreements and compromises entered into with the IRS. *See* §§ 7121 & 7122. Thus, these statutes have something in common: they all bar certain innocent spouses from refund eligibility under various provisions of the tax code.

When we juxtapose these statutes with the broad "notwithstanding any other law or rule of law language," we begin to discern its meaning. In drafting this language, Congress wanted certain provisions of the Internal Revenue Code barring refund eligibility — §§ 6511, 6512, 7121, and 7122 — to remain in effect. Congress, however, did not want "other" laws or rules of law to bar innocent spouses from refund eligibility, and it drafted broad language to that effect.

**[10]** The Commissioner argues that the "other rule of law" that Congress was concerned about was the doctrine of "res judicata." We find the Commissioner's argument persuasive for two main reasons. First, § 6015(g)(2), which restricts the application of § 6015(g)(1), is entitled "Res judicata." § 6015(g)(2). This is good indication Congress had res judicata in mind as it was drafting the refund provision. Second, there is a long history of tax statutes granting some transitional relief from res judicata in connection with the enactment and amendment of the "innocent spouse" statutes.[11] These statutes indicate that the "law or rule of law" Congress was contemplating when it began inserting such language into the innocent spouse statute had nothing to do with community property. Instead, Congress wanted to avoid the "law" of res judicata, while still respecting other limits on refunds that appear throughout the Internal Revenue Code.

**[11]** We acknowledge that the "notwithstanding any other law or rule of law" language is far from transparent. However, we find the Commissioner's contextual and historical interpretation of this phrase more persuasive than Mrs. Ordlock's far-reaching one. Accordingly, we do not read into the "notwithstanding" language of § 6015(g)(1) a mandate preempting the operation of community laws in making refunds. It is far more likely that Congress meant to avoid certain bars to refund eligibility while still respecting others, and used the

---

[11]For example, § 2114 of the Tax Reform Act of 1976, Pub. L. No. 04-455, 90 Stat. 1520, 1907 (1976), amended the effective date of provisions of the 1971 Act to allow the refund of any overpayment to taxpayers to whom the application of § 6013(e) "is prevented by *res judicata . . . without regard to such rule of law*." (emphasis added).

Additionally, § 6004 of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, 102 Stat. 3342, 3685, amended the effective date of provisions of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, 801-02, to allow for the making of refunds resulting from relief from liability to innocent spouses "*notwithstanding any law or rule of law (including res judicata)*." (emphasis added).

expansive "notwithstanding any law or rule of law" language to achieve that goal.

On a final note, we observe that Congress demonstrated its knowledge of the community property law implications of innocent spouse relief in other parts of § 6015. For example, in § 6015(d), Congress provided several rules for allocating items for purposes of determining *eligibility* for relief. Section 6015(d) also authorized the IRS to write additional allocation rules if necessary. However, no part of § 6015 made provisions for assigning refund payments between spouses if community property laws were not to apply. This silence speaks volumes. The process of assigning the economic sources of the payments made by Mrs. Ordlock and her husband would likely involve a complex factual analysis. It would also put the IRS in a different position than any other creditor collecting on the personal debts of a married taxpayer residing in California. *See* Cal. Fam. Code § 910. The absence of any legislative history addressing this issue is further indication that Congress did not intend to preempt community property law for refund purposes.

## CONCLUSION

[12] Nothing in § 6015 clearly preempts California community property law with respect to an innocent spouse's entitlement to a refund for a community property payment on the non-innocent spouse's federal income tax liability. Accordingly, we **AFFIRM** the decision of the Tax Court.