T.C. Memo. 2010-269

UNITED STATES TAX COURT

HAIM REVAH AND LUCINDA REVAH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

YAAKOV J. REVAH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 23331-08L, 24076-08L.    Filed December 9, 2010.

Edward M. Robbins, Jr., and Cory Stigile, for petitioners.

Elaine T. Fuller, for respondent.

MEMORANDUM OPINION

COHEN, Judge:  Petitions were filed in response to notices
of determination sent to (1) Haim and Lucinda Revah (case at
docket No. 23331-08L) and (2) Yaakov J. Revah (case at docket No.
24076-08L) that sustained proposed levy actions with respect to

petitioners' unpaid Federal income taxes for 1997 and 1998. The cases were consolidated for briefing and opinion. Pursuant to section 6330(d), petitioners seek review of respondent's determinations to proceed with the collection of their 1997 and 1998 Federal income tax liabilities and the assessed additions to tax. Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. Petitioners resided in California at the time they filed their petitions. Petitioners Haim Revah (Haim) and Yaakov Revah (Yaakov) are brothers (petitioners).

The case at docket No. 23331-08L involves deficiencies in Federal income tax that were assessed with respect to Haim's 1997 and 1998 tax returns that designated his filing status as married filing separately. Collection of Haim's tax liability from the assets and income of Mrs. Revah is permitted under California community property law to the extent such assets and income are community property. See Ordlock v. Commissioner, 533 F.3d 1136, 1138-1139 (9th Cir. 2008), affg. 126 T.C. 47 (2006).

The case at docket No. 24076-08L involves deficiencies in Federal income tax that were assessed with respect to Yaakov's 1997 and 1998 tax returns.

Audit of Revah Holdings, Inc., and Petitioners

During 1997 and 1998, petitioners were each 50-percent shareholders of Revatex, Inc., and SMJ American Manufacturing Co., Inc., both S corporations. In 1998, petitioners each became 50-percent shareholders of Indigo Concepts, Inc., an S corporation. During 1999, petitioners incorporated Revah Holdings, Inc., and were each 50-percent shareholders through 2001. Revah Holdings, Inc., filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for tax years 1999 and 2000 on a consolidated basis with Revatex, Inc., SMJ American Manufacturing, Co., Inc., and Indigo Concepts, Inc.

During 2001 through 2005, the Internal Revenue Service (IRS) audited the 1999 and 2000 tax returns of Revah Holdings, Inc., and petitioners, as shareholders. The IRS examiner determined adjustments with respect to Revah Holdings related to inventory and bad debt that resulted in increases to the 1999 and 2000 reported income. The inventory adjustment increased the amount of ending inventory for 2000 and thus the 2001 beginning inventory. A deduction for an uncollectible receivable in 2000 was disallowed because the examiner determined that the debts became uncollectible in 2001 rather than 2000. Thus, as the

examiner acknowledged, because the adjustments were timing matters, the 2001 reported income would be reduced when adjustments were made.  Accordingly, petitioners' representative advised the examiner that amended returns would be filed for 2001.

The audit adjustments to Revah Holdings flowed through to petitioners' individual tax returns and resulted in a decrease in the net operating losses (NOLs) that petitioners had reported on their previously filed tax returns and had carried back to 1997 and 1998.  These NOL reductions resulted in determined tax deficiencies for petitioners for 1997 and 1998.

Petitioners accepted the results of the audit, and accordingly their representative executed Forms 4549, Income Tax Examination Changes, on their behalf, agreeing to tax deficiencies for 1997 and 1998.  The Forms 4549 stated:

> I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. * * *

Haim agreed to deficiencies of $1,862,036 for 1997 and $236,928 for 1998.  Yaakov agreed to deficiencies of $1,862,036 for 1997 and $236,903 for 1998.

In November 2005, Revah Holdings filed an amended tax return for 2001 in accordance with the IRS examiner's adjustments that

reported a net decrease in income. As a result of the adjustments to Revah Holdings' return, on November 8, 2005, petitioners each filed amended tax returns to claim NOLs and also filed resulting refund claims. These amended tax returns and refund claims were for 2001 as well as 1996 and 1997 because petitioners were seeking to carry back the NOLs to offset income from the earlier years and claim the resulting refunds. The 1997 refund claims were accepted after audit, but the 1996 and 2001 claims were denied as untimely. See sec. 6511(d)(2)(A).

Accordingly, the IRS sent refund claim denial letters informing petitioners that they had the right to appeal the decisions to the IRS Appeals Office and/or file suit with the appropriate U.S. District Court or with the U.S. Court of Federal Claims within 2 years of the dates of the letters. Petitioners protested the denial of their 1996 refund claims but did not file suit in response to the claim denials.

Petitioners' Protests of the Refund Claim Denials

Petitioners' 1996 refund claim denial protests were assigned to the same IRS Appeals officer. Because petitioners' 1996 amended returns were being audited as a result of the Revah Holdings examination, the Appeals officer waited for the audit results before considering the protests. The IRS examiner auditing petitioners' amended 1996 returns determined that petitioners did not qualify for relief as they requested under

the mitigation provisions or the doctrine of equitable recoupment and sustained the refund claim denials.

After review and evaluation of petitioners' case files, the Appeals officer sustained the IRS examiner's disallowance of the refund claims. The Appeals officer noted in the Appeals case memo that equitable recoupment did not apply because income had not been subjected to two taxes based on inconsistent theories. Petitioners were informed by letters sent in January 2008 that the Appeals Office sustained the disallowance of the 1996 refund claims.

Section 6330 Proceedings

In December 2007, the IRS sent each petitioner a Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to the outstanding 1997 and 1998 income tax liabilities. In response, each petitioner submitted a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioners' collection due process (CDP) proceedings were assigned to different Appeals officers.

Haim Revah

The Appeals officer handling Haim's CDP proceeding obtained a copy of the Appeals case memo prepared by the Appeals Office with respect to the refund claim denial. A letter dated May 22, 2008, informed Haim that he was precluded from raising the

underlying liability because of the opportunity to do so at the prior proceeding.

On July 29, 2008, the Appeals officer held a CDP conference with Haim's representatives. During the conference, one of Haim's representatives stated that he agreed that the 1996 refund claim was time barred and asserted that equitable recoupment should apply to permit Haim to offset his 1997 and 1998 income tax liabilities against the time-barred 1996 refund. The Appeals officer responded that equitable recoupment cannot be applied in CDP proceedings and is not a collection alternative. No penalties had been assessed with respect to 1998 when the conference was held.

During the CDP proceedings, Haim's representatives also raised the issue of abatement of a failure to pay addition to tax for 1997. Haim's representative supplied the Appeals officer with a copy of a letter Haim's accountant had previously submitted to the IRS on his behalf requesting abatement of an assessed addition to tax under section 6651(a), claiming reasonable cause. The IRS had imposed the failure to pay addition to tax because Haim failed to pay the tax liabilities as agreed. The addition to tax was not imposed retroactively from the original due date of the tax but was imposed after the tax liability had been agreed upon and the IRS had sent a notice of balance due.

On August 27, 2008, the Appeals Office sent a notice of determination to Haim and Lucinda Revah sustaining the levy with respect to Haim's 1997 and 1998 tax liabilities. The memorandum attached to the notice stated that Haim's representatives had continued to raise the underlying liability issue by arguing the doctrine of equitable recoupment even though there had been a prior opportunity to dispute the underlying liabilities. The Appeals officer noted further that the accounting errors (including those of the S corporation) cannot be reasonable cause for penalty abatement.

The notice of determination further explained that

> The proposed levy action is deemed appropriate in this case because Mr. & Mrs. Revah are not interested in any collection alternatives and did not propose any alternative to resolve their liabilities. The proposed levy action thus balances the need for efficient collection of taxes with Mr. & Mrs. Revah's legitimate concern that any collection action be no more intrusive than necessary.

Yaakov Revah

The Appeals officer handling Yaakov's CDP proceeding obtained a copy of the Appeals case memo prepared by the Appeals Office with respect to his refund claim denial. The Appeals officer informed Yaakov's representative that only arguments regarding Yaakov's 1996 refund claim that had not been raised during the previous Appeals Office hearing would be heard. Yaakov's representative informed the Appeals officer that he was

not seeking a collection alternative and therefore financial information was not being supplied.

On July 29, 2008, the Appeals officer held a CDP conference with Yaakov's representatives. During the conference, one of Yaakov's representatives stated that he agreed with the Appeals Office's determination that the 1996 refund claim was time barred and asserted that the Appeals Office had the authority to apply equitable recoupment as a defense to collection. The Appeals officer informed Yaakov's representatives that equitable recoupment was not a collection alternative. There were no assessed additions to tax with respect to 1998 when the conference was held.

Abatement of a failure to pay addition to tax for 1997 was not discussed during the CDP conference. However, Yaakov's representative supplied the Appeals officer with a letter dated September 28, 2005, requesting abatement of a failure to pay addition to tax, claiming reasonable cause, that Yaakov's accountant had previously submitted to the IRS in response to a notice of Federal income tax due regarding the 1997 tax liability. A letter dated September 8, 2008, informed Yaakov that his addition to tax abatement request was denied because he did not meet reasonable cause criteria. The letter noted that the failure to pay addition to tax had been imposed because he failed to pay the 1997 tax liability as agreed and that the

addition to tax was not retroactively charged from the original due date of the tax.

The IRS sent a notice of determination to Yaakov on September 17, 2008, sustaining the levy with respect to his 1997 and 1998 tax liabilities.  The memorandum attached to the notice stated in part that

> the taxpayer was precluded from raising the equitable recoupment issue for period 1996 under the CDP hearing because the issue was raised and considered at a previous Appeals hearing and the taxpayer's * * * [representative] meaningfully participated in the hearing * * *.

> *       *       *       *       *       *       *

> Taxpayer has not proposed a collection alternative that would satisfy the tax liability.  Therefore, Collection's plan to levy balances the need for the efficient collection of tax with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. * * *

## Discussion

Under section 6330(c)(2)(A) a taxpayer may raise any relevant issue at a CDP hearing, including challenges to "the appropriateness of collection actions", and may make "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise."  The taxpayer may also challenge the existence and amount of the underlying tax liability if no notice of deficiency was received or the taxpayer did not otherwise have

an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B).

For purposes of section 6330(c)(2)(B), a taxpayer who has waived the right to challenge the proposed assessments by signing Form 4549 is deemed to have had the opportunity to dispute the underlying tax liability and is precluded by such waiver from challenging the underlying tax liability in the CDP hearing or before this Court. Aquirre v. Commissioner, 117 T.C. 324, 327 (2001); see also Lance v. Commissioner, T.C. Memo. 2009-129. Accordingly, petitioners were not entitled to contest the underlying tax liabilities for 1997 or 1998 at their respective CDP hearings.

Section 6330(c)(3) provides that the determination of the Appeals officer shall take into consideration the verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met; the issues raised by the taxpayer; and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.

Where the underlying tax liability is properly at issue in the hearing, we review that issue on a de novo basis. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). However, where the underlying tax liability is not at issue, we review the

determination for abuse of discretion.  <u>Nicklaus v. Commissioner</u>, 117 T.C. 117, 120 (2001).  To establish an abuse of discretion, the taxpayer must prove that the decision complained of is arbitrary, capricious, or without sound basis in fact or law. <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 111 (2007) (citing <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999)); see <u>Keller v. Commissioner</u>, T.C. Memo. 2006-166, affd. in part and vacated in part, 568 F.3d 710 (9th Cir. 2009).  In reviewing for abuse of discretion, we generally consider only arguments, issues, and other matters that were raised at the CDP hearing or otherwise brought to the attention of the Appeals Office.  <u>Giamelli v. Commissioner</u>, <u>supra</u> at 115; <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002).

Petitioners argue that it was an abuse of discretion for the Appeals Office not to consider the application of equitable recoupment during the CDP proceeding.  Petitioners assert that consideration of equitable recoupment in the context of reviewing their protests of the refund claim denials "has no bearing on whether they are entitled to equitable recoupment relief as a defense to collection" and that "any prior review of equitable recoupment in a refund context should not deprive Appeals of jurisdiction."  Petitioners assert that equitable recoupment should be applied because they:

> have been whipsawed and they have not been able to
> exhaust their administrative remedies to address this

whipsaw in a meaningful manner.  By assessing
deficiencies in 1997 and 1998 resulting from the 1999
and 2000 examinations [of Revah Holdings], and also by
denying the amended 2001 returns and refund claims
seeking these deductions, the Service is taxing the
same item/transaction twice.

Section 6214(b) provides that this Court "may apply the doctrine of equitable recoupment to the same extent that it is available in civil tax cases before the district courts of the United States and the United States Court of Federal Claims." The doctrine of equitable recoupment is a judicially created doctrine that, under certain circumstances, allows a litigant to avoid the bar of an expired statutory limitation period.  The doctrine prevents an inequitable windfall to a taxpayer or to the Government that would otherwise result from the inconsistent tax treatment of a single transaction, item, or event affecting the same taxpayer or a sufficiently related taxpayer.  Equitable recoupment operates as a defense that may be asserted by a taxpayer to reduce the Commissioner's timely claim of a deficiency or by the Commissioner to reduce the taxpayer's timely claim for a refund.  When applied for the benefit of a taxpayer, the equitable recoupment doctrine permits a taxpayer to raise a time-barred claim in order to reduce or eliminate the money owed on the timely claim.  See Rothensies v. Elec. Storage Battery Co., 329 U.S. 296, 299-300 (1946).  Equitable recoupment cannot be used offensively to seek a money payment, but may be used

defensively to offset an adjudicated deficiency.  <u>United States</u>

<u>v. Dalm</u>, 494 U.S. 596, 611 (1990).

As a general rule, the party claiming the benefit of an

equitable recoupment defense must establish that it applies.

Rules 39, 142(a); <u>Menard, Inc. v. Commissioner</u>, 130 T.C. 54, 62

(2008).  Thus, a taxpayer who raises equitable recoupment as a

defense must establish that it applies by satisfying three

elements:

> First, a single transaction must be the taxable event
> to be considered in recoupment.  Second, the single
> transaction must be subject to two taxes based upon
> inconsistent legal theories.  Finally, the statute of
> limitations must bar recoupment, while either the
> government's asserted deficiency or the taxpayer's
> claim for a refund must be timely. * * *

<u>Catalano v. Commissioner</u>, 240 F.3d 842, 844 (9th Cir. 2001),

affg. T.C. Memo. 1998-447.

> Petitioners assert that

> by rejecting as untimely Petitioners' individual refund
> claims flowing through from the 2001 amended Form 1120S
> for Revah Holdings (as well as the corresponding
> shareholder returns and carryback claims for 1996 and
> 2001), Respondent is subjecting the same items
> (inventory and uncollectible receivable) to two,
> inconsistent taxes. * * * By assessing deficiencies in
> 1997 and 1998 resulting from the 1996 and 2000
> examinations, while rejecting amended 2001 returns and
> refund claims seeking these deductions, Respondent is
> attempting to tax the same item or transaction twice.

Equitable recoupment does not apply if the multiple bases

for a tax assessment are not inconsistent.  Cf. <u>Bull v. United</u>

<u>States</u>, 295 U.S. 247 (1935) (holding that where partnership

profits had already been subject to estate tax, they could not be further subject to income tax); Estate of Branson v. Commissioner, 264 F.3d 904, 917 (9th Cir. 2001) (holding that a single item was subjected to two taxes inconsistently where stock was taxed both as corpus of estate and income to beneficiaries), affg. 113 T.C. 6 (1999).

The audit adjustments of Revah Holdings for its years 1999 and 2000 related to inventory and bad debt that flowed through to petitioners' individual tax returns. These adjustments resulted in a decrease in the reported NOLs that had previously been carried back to earlier years including 1997 and 1998. When these NOLs were initially applied, the tax liabilities for those earlier years were reduced and petitioners had overpayments. After the audit adjustments occurred and petitioners were assessed tax deficiencies for 1997 and 1998, they submitted amended returns for 1996, 1997, and 2001 to claim NOLs and resulting refunds. Respondent rejected as untimely the amended returns for 1996 and 2001 and the corresponding submitted refund claims.

We have noted previously that when an NOL is claimed in the wrong year, it is not allowable and there is no inconsistent legal theory subjecting petitioners to two taxes. See Farmer v. Commissioner, T.C. Memo. 1998-327 (finding no inconsistent position when a taxpayer erroneously carried forward an NOL

without properly electing to forgo the carryback period under section 172(b)(3) and was disallowed both the loss carryforward in a timely deficiency proceeding and a credit or refund from the prior years to which the losses should have originally been carried back). The audit adjustments of Revah Holdings are timing matters and resulted in NOL claims that flowed through to petitioners' individual tax returns. Petitioners' inability to use the NOLs to reduce tax liabilities is not the result of the inequitable application of inconsistent theories of taxation as contemplated by the equitable recoupment doctrine. Petitioners simply failed to make their claims within the period allowed by statute. Respondent has not applied two taxes based on inconsistent theories of taxation.

Petitioners contend that the Court should remand the cases to the Appeals Office because equitable recoupment was not properly considered as a defense to collection during the CDP proceedings. We have the discretion to remand a case to the Appeals Office for consideration of a matter that was inadequately considered in the CDP hearing, and there are circumstances in which a remand is appropriate to clarify a verification under section 6330(c)(1). See Hoyle v. Commissioner, 131 T.C. 197 (2008). Without addressing whether it was an abuse of discretion for the Appeals Office not to consider equitable recoupment as a defense to collection, we note that the

Appeals Office's failure to do so constitutes harmless error because equitable recoupment does not apply. Thus, we conclude that a remand to Appeals for a further hearing is not necessary and would not be productive. See Perkins v. Commissioner, 129 T.C. 58 (2007); Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).

Addition to Tax

Section 6651(a)(3) imposes an addition to tax for failure to pay any amount, in respect of any tax required to be shown on a tax return which is not so shown, within 21 calendar days, or 10 business days when the amount exceeds $100,000, from the date of notice and demand of payment. This addition to tax is imposed unless the taxpayer establishes that the failure to pay was due to reasonable cause and not willful neglect. Id.; see Burke v. Commissioner, T.C. Memo. 2009-282. According to the regulations:

> A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date. * * *

Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Respondent determined that petitioners are liable for an addition to tax under section 6651(a)(3) because they have not paid the amounts owed according to the forms they signed agreeing to income tax deficiencies resulting from the audit of Revah

Holdings. Petitioners requested abatement of the addition to tax, on the basis of reasonable cause. Respondent denied their requests.

Petitioners argue that it was an abuse of discretion for the Appeals Office not to grant their abatement requests on reasonable cause grounds. Petitioners assert that because their accountant took a position that ultimately no tax would be owed, no additions to tax should accrue (additions to tax were assessed before petitioners' amended returns were filed). Petitioners assert that they relied on their accountant and that "it was reasonable, prudent, and consistent with ordinary business care for Petitioners to rely on their advisor's advice when addressing the taxes in dispute."

At no time have petitioners claimed that they were either unable to pay the tax or would suffer undue hardship if they paid. Nor have they otherwise established that they had reasonable cause under section 301.6651-1(c), Proced. & Admin. Regs. Petitioners are liable for the additions to tax under section 6651(a)(3) for 1997, and respondent's decisions not to abate the additions to tax was not an abuse of discretion.

We conclude that petitioners have not shown that it was arbitrary, capricious, or without sound basis in fact or law for the Appeals Office to sustain respondent's plans to levy regarding petitioners' unpaid tax liabilities and additions to

tax for the years in issue.  We have considered the other arguments of the parties, and they are either without merit or need not be addressed in view of our resolution of the issues.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.