ANN MARIE MINIHAN, PETITIONER, AND JOHN J. MINIHAN, JR., INTERVENOR *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26595–09.          Filed January 11, 2012.

P petitioned for review of R's denial of innocent spouse relief under I.R.C. sec. 6015(f), and R created a separate account for each spouse in order to pursue collection from I (P's former husband) while collection against P was suspended pursuant to I.R.C. sec. 6015(e)(1)(B). While P's petition was pending, R collected the entire tax liability at issue by levying on a bank account owned jointly by P and I. As a result, P now seeks a refund pursuant to I.R.C. sec. 6015(g)(1), in the amount of 50% of the funds levied from the joint account. R contends that P is not entitled to a refund of funds owned jointly by P and I and applied to I's liability. *Held*: Under State law P owned a 50% share of the funds held in the joint bank account, and she is not precluded from a refund under I.R.C. sec. 6015(g)(1) of her share of levied funds.

*Roger M. Ritt*, for petitioner.
John J. Minihan, Jr., for himself.
*Erika B. Cormier*, for respondent.

GUSTAFSON, *Judge*: This case arises from petitioner Ann Minihan's timely request under section 6015(f)[1] for "innocent spouse" relief from joint liability for tax years 2001, 2002,

---

[1] Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

1

2003, 2004, 2005, and 2006. The Internal Revenue Service (IRS) denied Ms. Minihan's request for relief because (it concluded) she had not shown that it would be inequitable to hold her responsible for the tax liability. On November 9, 2009, Ms. Minihan filed with this Court a timely petition appealing the IRS's denial of innocent spouse relief and asking this Court to determine the appropriate relief available to her under section 6015—in particular, a refund of her share of the funds taken by the IRS from a joint bank account to satisfy the separate liability of her former husband, intervenor John Minihan, for the joint income tax debt.

The IRS contends (1) that Ms. Minihan is not entitled to any relief from joint liability under section 6015 and (2) that, even if she is entitled to such relief, she is not entitled to any refund of the money levied from the joint account. On February 1, 2011, the IRS moved for summary judgment pursuant to Rule 121 on the second issue only, i.e., Ms. Minihan's non-entitlement to a refund of the levied funds. On March 21, 2011, the Court held a hearing on the IRS's motion, took that motion under advisement, and held a partial trial of the facts pertinent to the refund issue.[2] The IRS's motion for summary judgment will be denied as moot (in view of the partial trial), and the refund issue will be decided in favor of Ms. Minihan.

FINDINGS OF FACT

At the time Ms. Minihan filed her petition, she resided in Massachusetts. On March 2, 2010, Mr. Minihan intervened in this action pursuant to Rule 325(b). At the time Mr. Minihan filed his notice of intervention, he also resided in Massachusetts.

---

[2] The question whether a section 6015(f) petitioner is eligible for *any* relief is logically prior to the question whether she is entitled to a particular form of relief (i.e., a refund); and in a sense the Court's holding a partial trial on the latter question first puts the cart before the horse. However, because here the entire joint liability has been satisfied, petitioner's request for relief is moot (since the IRS will engage in no more collection activity) unless a refund is possible. The IRS sensibly moved for partial summary judgment on this issue, since if the motion succeeded, the parties and the Court could avoid a trial on the fact-intensive and sometimes vexing question of entitlement to equitable relief under section 6015(f). We follow the IRS's lead in addressing the refund question first; but we decide here that petitioner's eligibility for section 6015(f) relief cannot be avoided in this case.

*The Minihans' family and finances*

Mr. and Ms. Minihan were married in 1989. They have three daughters, born in 1990, 1992, and 1994. Throughout their marriage Mr. Minihan worked outside the home in various business ventures, while Ms. Minihan worked as a homemaker raising their daughters. Before their divorce, the Minihans enjoyed (in Ms. Minihan's words) an "upper-middle class lifestyle" that included living in a $1.5 million home in Hingham, Massachusetts, owning a summer home on Cape Cod, and sending their daughters to private school.

*Tax filings*

Mr. Minihan handled the family finances. Ms. Minihan alleges that it was not until after the Minihans' financial situation deteriorated in 2007 that Ms. Minihan became aware of and involved in their finances. During the tax years in question, Mr. Minihan prepared joint Federal income tax returns for Mr. and Ms. Minihan. Both Mr. and Ms. Minihan signed the returns for these years. However, allegedly unbeknownst to Ms. Minihan, when Mr. Minihan filed the joint returns he did not remit payment of the Federal income tax balances (or additions to tax) due for 2002, 2003, 2004, 2005, or 2006.[3] This resulted in the IRS's assessing the amounts due, plus additions to tax. The IRS has never determined an understatement or deficiency against Mr. or Ms. Minihan.

In 2004 the IRS started collection activity with regard to the Minihans' unpaid taxes, additions to tax, and interest for tax years 2001 and 2002. Over the course of 2004 and 2005, the IRS by levy collected $6,704.50, which the IRS applied against the Minihans' 2001 and 2002 tax liabilities. The IRS did not make any additional levies until 2010.

Ms. Minihan says she first learned about the Federal income tax delinquencies when she saw IRS correspondence in July 2007 regarding their unpaid taxes. After learning this information, Ms. Minihan resubmitted their joint returns at her accountant's suggestion (for reasons not clear in our record), but she did not remit payments for the tax or additions to tax due on those returns.

---

[3] For 2001 the Minihans filed their joint return and paid their tax due on time but incurred an estimated tax penalty, which remained unpaid until the IRS's 2004 and 2010 levies collected the entire amount due.

*Divorce, sale of house, and innocent spouse petition*

The Minihans' marriage rapidly deteriorated in the summer of 2007, and Ms. Minihan filed for divorce in the Probate and Family Court of Massachusetts on September 21, 2007. The divorce, which was not finalized until January 2011, was contentious and difficult for the Minihans. In 2008 the Minihans sold their family house in Hingham, Massachusetts—which the two of them had owned jointly—and deposited the net proceeds from the sale into a joint Bank of America certificate of deposit account, which likewise the two of them owned jointly.[4] It was their mutual intention that Mr. and Ms. Minihan would be co-owners of the Bank of America account, that they would each be entitled to an equal amount of the account, and that they would "keep the money [in the account] so neither one could run off with it", since the money in the account was to be used to fund their children's education. When the divorce was finalized in January 2011, the final divorce decree provided that all of the funds remaining in the Bank of America account—about $26,000 after the IRS levies discussed below—would be used to pay their children's education expenses. Since the remainder of the funds would be consumed with the children's education expenses, the divorce decree did not address any further asset division with respect to this account.

On June 23, 2008, the IRS received Ms. Minihan's Form 8857, Request for Innocent Spouse Relief, requesting relief from joint and several liability for the tax due for tax years 2001 through 2006. In accordance with IRS procedure, upon the filing of Ms. Minihan's request for section 6015 relief, the IRS moved Mr. and Ms. Minihan's joint assessment accounts to separate mirrored accounts for each of the tax years.[5]

---

[4] Although there are irregularities in the paperwork for the account, we find that it was a joint account that Mr. and Ms. Minihan co-owned. In her objection to the IRS's motion for summary judgment, Ms. Minihan included several exhibits that refer to her as "co owner of a CD at Bank of America with an account # [ending 0682]" or refer to the Bank of America account as "a joint bank account". In addition, Ms. Minihan testified, regarding the Bank of America account, that "we both had to go to the bank and we both had to be there to sign for * * * the withdrawal". Ms. Minihan's post-trial submissions repeatedly refer to the account as a "joint account". Finally, the Bank of America account's "CD Deposit Receipt" and "Modification Agreement" show that the account title included both Mr. and Ms. Minihan.

[5] After Ms. Minihan filed her petition for innocent spouse relief, the IRS created separate mirrored accounts for the joint tax liability, pursuant to Internal Revenue Manual (IRM) pt. 25.15.12.17.3 (Nov. 9, 2007) ("Mirror[ed] accounts are currently created for * * * Innocent spouse [cases]"). This allowed the IRS to pursue Mr. Minihan for collection on the entire joint liability amount, while collection against Ms. Minihan was suspended. *See id.* pt. 25.15.15.1

Thereafter, the IRS had a separate account for each spouse, reflecting for each the same liabilities derived from their joint filings.

In August 2009, in the midst of the divorce proceedings, Mr. Minihan sent a letter to the IRS informing it about the joint Bank of America account that held the proceeds from the sale of their Hingham house. The bank account balance at the time of the letter was about $230,000. Shortly after receiving Mr. Minihan's letter, the IRS issued to Ms. Minihan a Final Appeals Determination denying her claim for innocent spouse relief. In response, Ms. Minihan filed a timely petition with this Court on November 9, 2009.

*Collection of Mr. Minihan's separate liability*

By February 2010 the balance in the joint account was about $170,000, since money in the account had been used to pay for their children's education expenses, legal fees associated with the Minihans' divorce, and unspecified State taxes. In February 2010 the IRS issued two notices of levy to Bank of America, attaching Mr. Minihan's interest in the Bank of America account. One levy was to satisfy his income tax liabilities for the taxable years 2001 and 2002, and the other was to satisfy his liabilities for the taxable years 2000, 2003, 2004, 2005, and 2006.

On March 2, 2010, the IRS received a levy payment of $20,584.93 from Bank of America, which was applied to Mr. Minihan's income tax liabilities for the taxable years 2001 and 2002 in the amounts of $226.87 and $20,358.06 and which satisfied the remaining liability for those years. On March 11, 2010, the IRS received a levy payment of $63,257.42 from Bank of America, which was applied to Mr. Minihan's income tax liabilities for the taxable years 2000, 2003, 2004, 2005, and 2006 in the amounts of $10,496.28, $13,353.26, $11,949.34, $11,336.89, and $16,121.65 and which satisfied the remaining liability for those years.

*The IRS's motion for summary judgment and trial*

On February 1, 2011, the IRS moved for summary judgment with regard to Ms. Minihan's petition for relief under

(Mar. 21, 2008) ("Mirroring will also allow collection activity to continue for the nonrequesting spouse"). Any payment collected from Mr. Minihan was credited to both mirrored accounts. *See id.* pt. 25.15.12.17.3.

section 6015(f). The IRS argued that, since the entire joint and several liability had been fully paid (by application of the levied funds to Mr. Minihan's tax account), collection activity would cease, and the only relief that Ms. Minihan might thereafter seek would be a refund. The IRS contends that, as a matter of law, Ms. Minihan is not entitled to a refund because the liability was paid not with Ms. Minihan's separate funds, but with joint funds.

After hearing the parties' arguments on the motion, the Court took under advisement the IRS's motion for summary judgment and proceeded with a partial trial on the issue in the IRS's motion. Pro bono counsel entered an appearance on Ms. Minihan's behalf for trial. At trial Ms. Minihan contended that the IRS had levied upon property that Mr. Minihan could not acquire unilaterally and that a share of the money levied constituted separate payments by Ms. Minihan, of which she could be entitled to a refund.

After trial Ms. Minihan moved to reopen the record in order to submit additional documentary evidence from Bank of America regarding the ownership and nature of the joint account. The proffered evidence included a "Certificate of Deposit Receipt" and a "Modification Agreement" from Bank of America. Although Mr. Minihan and the IRS object to Ms. Minihan's motion to reopen the record, we will overrule those objections, reopen the record, and receive into evidence Ms. Minihan's documents submitted after trial.[6]

Presently before the Court is the question whether Ms. Minihan is precluded from obtaining a refund of the levied

---

[6] Reopening the record to receive additional evidence is a matter within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971); *Butler v. Commissioner*, 114 T.C. 276, 286–287 (2000). We exercise our discretion and grant Ms. Minihan's motion. However, she evidently offers the documents in an attempt to show that she owned the account unilaterally, or that by the terms of the account Mr. Minihan could not (and therefore his creditors could not) access the funds without her express consent. If we were deciding only the IRS's motion for summary judgment, the documents might be sufficient to raise a genuine issue of material fact as to joint ownership; but having conducted a trial, we are actually deciding the issue and we do *not* (as under Rule 121) make every inference in Ms. Minihan's favor and impose on her only the burden to raise genuine issues of fact. Rather, we weigh evidence and find facts; and in so doing, we find—in part on the basis of Ms. Minihan's admissions (*see supra* note 4)—that the account was a joint account. Therefore, reopening the *trial* record for this evidence has little practical effect (and could even be criticized for that reason, *see Butler v. Commissioner*, 114 T.C. at 287 (the Court "will not grant a motion to reopen the record unless * * * the evidence probably would change the outcome of the case")); but we allow Ms. Minihan's late-produced documents into evidence lest there be any doubt that she has had her day in court on this point.

funds because they were funds from a joint account applied to Mr. Minihan's tax account.

OPINION

I. *Standard and scope of review*

In determining whether a taxpayer is entitled to equitable relief under section 6015(f), we may consider evidence introduced at trial which was not included in the administrative record, *Porter v. Commissioner*, 130 T.C. 115, 117 (2008), and we apply a de novo standard of review, *Porter v. Commissioner*, 132 T.C. 203 (2009). Except as otherwise provided in section 6015, the taxpayer bears the burden of proof. *See* Rule 142(a); *Alt v. Commissioner*, 119 T.C. 306, 311 (2002), *aff'd*, 101 Fed. Appx. 34 (6th Cir. 2004).

II. *Joint and several liability and section 6015(f) relief*

A. *General principles*

Section 6013(d)(3) provides that if married taxpayers file a joint return, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several. *See also* 26 C.F.R. sec. 1.6013–4(b), Income Tax Regs. That is, each spouse is responsible for the entire joint tax liability. However, section 6015(f) provides as follows:

SEC. 6015(f). EQUITABLE RELIEF.—Under procedures prescribed by the Secretary, if—
   (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
   (2) relief is not available to such individual under subsection (b) or (c),
the Secretary may relieve such individual of such liability.

Thus, a taxpayer may be relieved from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable.

In accord with the statutory provision that section 6015(f) relief is to be granted "[u]nder procedures prescribed by the Secretary", the Commissioner has issued revenue procedures to guide IRS employees in determining whether a requesting spouse is entitled to relief from joint and several liability. *See* Rev. Proc. 2003–61, 2003–2 C.B. 296, *modifying and super-*

*seding* Rev. Proc. 2000–15, 2000–1 C.B. 447. [7] Revenue Procedure 2003–61, *supra*, lists the factors that IRS employees should consider, and the Court may consult those same factors, among other factors, when reviewing the IRS's denial of relief under section 6015(f). *See Washington v. Commissioner*, 120 T.C. 137, 147–152 (2003). For purposes of this Opinion, we assume (without deciding) that Ms. Minihan is entitled to relief under section 6015(f), and we do not further address that issue.

### B. *Section 6015(g)(1) refund relief*

When a taxpayer seeks relief under section 6015(f), the relief comes in the form of being excused from joint and several liability for the joint tax due, and the taxpayers's liability is recalculated as if a married-filing-separately return had been properly filed. *Pullins v. Commissioner*, 136 T.C. 432 (2011). If the IRS has not collected the joint tax due, the taxpayer would then be required to pay only the portion attributable to her, as calculated on a married-filing-separately basis. *Id.* If the IRS has already collected the tax (the situation that now exists in this case), the taxpayer may be allowed a refund under section 6015(g)(1), which provides as follows:

SEC. 6015(g). CREDITS AND REFUNDS.—

(1) IN GENERAL.—Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section.

However, before any taxpayer may be allowed a refund or credit, there must be a determination that the taxpayer has made an overpayment. *Ordlock v. Commissioner*, 126 T.C. 47, 69 (2006) (Thornton, J., concurring), *aff'd*, 533 F.3d 1136 (9th Cir. 2008). Section 6402 makes this expressly clear, stating:

SEC. 6402(a). GENERAL RULE.—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect to an internal revenue tax *on the part of the person who*

---

[7] On January 5, 2012, the IRS released a proposed revenue procedure to supersede Revenue Procedure 2003–61. *See* Notice 2012–8, 2012–4 I.R.B. 1. No changes are proposed there that would affect the issues we discuss here.

*made the overpayment* and shall * * * refund any balance *to such person*. [Emphasis added.]

A taxpayer makes an overpayment if she remits funds to the Secretary in excess of the tax for which she is liable. *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947) (defining an overpayment as "any payment in excess of that which is properly due"); *see also Estate of Smith v. Commissioner*, 123 T.C. 15, 21 (2004).

Therefore, even if a taxpayer is relieved from joint and several liability for the tax due on a joint return by application of section 6015(f), the taxpayer is not entitled to a refund under section 6015(g)(1) unless the taxpayer made an overpayment—i.e., "[paid] more than is owed, for whatever reason or no reason at all." *United States v. Dalm*, 494 U.S. 596, 610 n.6 (1990); *see Ordlock v. Commissioner*, 126 T.C. at 61 (holding that a taxpayer entitled to innocent spouse relief was not entitled to a refund of joint tax liabilities paid using community property assets of the marital estate); *Kaufman v. Commissioner*, T.C. Memo. 2010–89 (declining section 6015 refund when funds were paid by deceased husband's estate); *Rosenthal v. Commissioner*, T.C. Memo. 2004–89 ("It also must be shown that the payments were not made with the joint return and were not joint payments or payments that the nonrequesting spouse made"). This conclusion is consistent with Revenue Procedure 2003–61, sec. 4.04(2), 2003–2 C.B. at 299, in which the IRS stated:

In a case involving an underpayment of income tax, a requesting spouse is eligible for a refund of *separate payments* that he or she made after July 22, 1998, if the requesting spouse establishes that he or she provided the funds used to make the payment for which he or she seeks a refund. * * * [Emphasis added.]

Accordingly, if we assume, arguendo, that Ms. Minihan is eligible for relief under section 6015(f), the issue for decision is whether the IRS's levy on the joint Bank of America account to satisfy Mr. Minihan's tax liability can constitute an overpayment by Ms. Minihan, entitling her to a refund. If so, then relief might be available to Ms. Minihan, and we would therefore need to determine whether she is entitled to equitable relief under section 6015(f).

III. *The parties' contentions*

The IRS contends that the account it levied upon was a joint account and that the proceeds from the levy satisfied the entire liability at issue. Since Massachusetts law gives either owner of a joint account the right to withdraw the entire account balance, the IRS asserts that the levy was proper and, as a result, Ms. Minihan is not entitled to a refund. The IRS argues that Ms. Minihan is not entitled to a refund because "the Bank of America levy payments came from intervenor's assets or joint assets, but not petitioner's separate assets".

In response, Ms. Minihan contends that the account was a special account established during her and Mr. Minihan's divorce to fund their children's education. She claims that neither Mr. Minihan nor she could withdraw any amount without the other's consent. Accordingly, Ms. Minihan argues that the IRS's levy "acquired property which the intervenor could not acquire unilaterally and, consequently, the amounts levied cannot constitute solely payments of the intervenor". Additionally, Ms. Minihan argues that the levy was not a "joint payment" because the IRS levy was non-consensual. Instead Ms. Minihan argues that, given the nature of the account, a portion of the levy amounts to a "separate payment" by Ms. Minihan giving rise to an overpayment by Ms. Minihan and entitling her to a refund. For the reasons explained below, we hold that a portion of the account did indeed constitute separate funds of Ms. Minihan that might be refunded to her if she proves that she is entitled to relief under section 6015(f).

IV. *Analysis*

A. *Identifying a "separate payment"*

The requirement of Revenue Procedure 2003–61, *supra*, that a petitioning spouse make a "separate payment" or "provide the funds" used to pay the joint tax liability in order to be entitled to a refund under section 6015(g)(1), is in accord with section 6402, which requires, inter alia, that in order to obtain a refund, a person must make an overpayment. The analysis of whether a payment is a "separate payment" is straightforward when payments are voluntary or, if involun-

tary (e.g., by levy), when the payments are from property owned by only one spouse. *See Leissner v. Commissioner*, T.C. Memo. 2003–191 (allowing a refund when a payment resulted from a levy on the taxpayer's solely owned IRA account). The analysis gets considerably murkier when, as is the case here, the payment arises from a levy on jointly owned property.

The IRS attempts to simplify the analysis by arguing that Ms. Minihan could not make a "separate payment" of the levied property if the IRS properly levied against Mr. Minihan and the money taken was not separately owned but jointly owned. The IRS was barred from making involuntary collections from Ms. Minihan by section 6015(e)(1)(B)(i), which provides that "no levy * * * shall be made * * * against the individual * * * requesting equitable relief under subsection (f) * * * until the decision of the Tax Court has become final." The IRS therefore set up a separate account for Mr. Minihan and effected the levy at issue in order to collect *from him*. That being the case, the IRS argues, in effect, that if the levy was proper under section 6331 and was not barred by section 6015(e)(1)(B)(i) because the property seized was co-owned by a taxpayer from whom the IRS was allowed to collect (here, Mr. Minihan), then by definition the levied property was not the separate property of the other co-owner (Ms. Minihan).

We disagree with the IRS's contention and conclude that the relevant inquiry is whether under State law Ms. Minihan has a surviving separate legal interest in the levied assets. This conclusion is based on the following.

B. *Provisional nature of section 6331*

Congress has granted the Secretary of the Treasury (and consequently the IRS) powerful tax collection tools, not the least of which is the power granted in section 6331(a) to levy on a delinquent taxpayer's property. Section 6331(a) provides that "[i]f any person liable to pay any tax neglects or refuses to pay * * *, it shall be lawful for the Secretary to collect such tax * * * by levy upon all property and rights to property * * * belonging to such person".

Applying section 6331, the Supreme Court held in *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985),

that the IRS can lawfully levy on a joint bank account to satisfy one account holder's individual tax liability. Under State law the taxpayer had an unconditional right to withdraw the entire joint account, even though the taxpayer was only one of three owners. The Supreme Court held that since the taxpayer had a State law right to withdraw the entire account, the IRS as a creditor could withdraw the entire account under Federal law (i.e., section 6331) notwithstanding State collection law that may exist.[8] *Id.* at 724.

However, the Supreme Court's holding that the levy was lawful did not end its discussion of the nondelinquent co-owner's subsequent claims on the levied funds. The Supreme Court discussed as follows the provisional nature of a section 6331 levy:

"The final judgment in [a levy] action settles no rights in the property subject to seizure." *United States v. New England Merchants National Bank*, 465 F.Supp. 83, 87 (Mass. 1979). Other claimants, if they have rights, may assert them. Congress recognized this when the Code's summary-collection procedures were enacted, S. Rep. No. 1708, 89th Cong., 2d Sess., 29 (1966), U.S. Code Cong. & Admin. News 1966, p. 3722, and when it provided in § 7426 of the Code, 26 U.S.C. § 7426, that one claiming an interest in property seized for another's taxes may bring a civil action against the United States to have the property or the proceeds of its sale returned.

   * * * * * * *

The Court [in *United States v. Rodgers*, 461 U.S. 677 (1983)] * * * recognized what we now make explicit: that § 6331 is a *provisional* remedy, which does not determine the rights of third parties until *after* the levy is made, in postseizure administrative or judicial hearings.
 [*Nat'l Bank of Commerce*, 472 U.S. at 728, 731; fn. ref. omitted.]

Thus the Supreme Court made a distinction between the question whether the IRS could properly proceed with a levy (in answer to which it allowed the IRS to proceed) and the question whether claimants (i.e., joint owners other than the debtor) thereafter could nonetheless try to get money back (in answer to which it held that they *could* make claims—for instance, in District Court under section 7426 or administratively under section 6343(b)).

Although the instant case arises in a section 6015 claim for relief—not the context of *Nat'l Bank of Commerce*—the rea-

---

[8] In *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 718 (1985), the Arkansas State collection law at issue did not allow a creditor to subrogate to the position of the debtor with regard to the debtor's power to withdraw the entire joint account balance.

soning of that case would still appear to be applicable: A lawful levy under section 6331 does not extinguish a third party's rights in levied property.[9]

## C. *Refund of levied property under section 6015(g)(1)*

First, however, we must determine whether the rights of an "innocent spouse" who claims a refund under section 6015(g)(1) survive post-levy in the same way that the rights of a section 7426 or section 6343(b) wrongful levy claimant survive. In *EC Term of Years Trust v. United States*, 550 U.S. 429, 436 (2007), the Supreme Court held that a trust which claimed an interest in money the IRS levied to satisfy beneficiaries' tax liabilities cannot maintain a refund suit under 28 U.S.C. section 1346(a)(1) when the trust missed the deadline to bring a section 7426 wrongful levy action. *Id.* The Supreme Court concluded that section 7426 was the trust's exclusive remedy. *Id.* Accordingly, we consider whether the holding of *EC Term of Years Trust*—that an available wrongful levy claim under section 7426 precludes a subsequent refund claim—might apply to preempt an innocent spouse's refund claim under section 6015(g)(1). (Since we conclude that it does not, we do not need to address whether Ms. Minihan could have pursued a wrongful levy action under section 7426.)

The Supreme Court in *EC Term of Years Trust*, 550 U.S. at 433, 435, followed the axiom that "'a precisely drawn, detailed statute pre-empts more general remedies'" to hold that a refund claim under 28 U.S.C. section 1346(a)(1) (the general remedy) is precluded by section 7426 (the precisely drawn remedy) in the context of a third party's claim for refund of property "wrongfully levied upon".

However, Ms. Minihan's claim for a refund—an "innocent spouse" remedy under section 6015(g)(1)—is distinguishable from the tax refund claims under 28 U.S.C. section 1346(a)(1)

---

[9] This present case is distinguishable from *Ordlock v. Commissioner*, 126 T.C. 47 (2006), *aff'd*, 533 F.3d 1136 (9th Cir. 2008), which held that a taxpayer entitled to innocent spouse relief is *not* entitled to a refund after joint tax liabilities were collected from community property assets. The present case deals with a section 6331 levy on a jointly owned bank account rather than a section 6321 lien on community property, as was the case in *Ordlock*. The presence of a section 6331 levy in this case directly implicates the Supreme Court's holding in *Nat'l Bank of Commerce*. Furthermore, the distinction between joint assets and community property is significant because, for the purpose of creditors, the marital community estate is akin to a separate entity, whereas a jointly owned asset is simply an asset in which a debtor has an interest. *See* Cal. Fam. Code sec. 910 (West 2004).

that were at issue in *EC Term of Years Trust*. Unlike the statutes conferring tax refund jurisdiction (28 U.S.C. secs. 1346(a)(1) and 1491(a)(1)), the statute that confers "innocent spouse" jurisdiction on the Tax Court—section 6015(e)(1)(A)—provides:

*In addition to any other remedy provided by law*, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * * [Emphasis added.]

Moreover, section 6015(g)(1) provides that "*notwithstanding any other law or rule of law* (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section." (Emphasis added.)[10] Congress, by creating innocent spouse remedies "in addition to any other remedy"[11] and by allowing refunds "notwithstanding any other law or rule of law", expressly foreclosed the proposition that section 7426 or 6343(b) could be the exclusive remedy for an innocent spouse seeking a refund of levied property in which she had an interest.

Whether or not wrongful levy claims under section 7426 (judicial claims) or section 6343(b) (administrative claims) were available to her, Ms. Minihan is permitted to claim a refund under section 6015(g)(1) to recover her share of levied property, as she has done here.

D. *Ms. Minihan's rights in the levied property*

We now apply the foregoing principles to the facts of this case to decide whether Ms. Minihan could be entitled to a refund under section 6015(g)(1) assuming, arguendo, that she is entitled to innocent spouse relief under section 6015(f). The parties contend that the answer depends on whether the

---

[10] *Cf. Ordlock v. Commissioner*, 126 T.C. at 56 (concluding that the "notwithstanding" provision of section 6015(g)(1) does not take precedence over State community property laws which are necessary to define ownership in payments).

[11] Congress enacted section 6015 as a means of expanding relief to innocent spouses. *See* H.R. Conf. Rept. No. 105–599, at 249–255 (1998), 1998–3 C.B. 747, 1003–1009; S. Rept. No. 105–174, at 55–60 (1998), 1998–3 C.B. 537, 591–596; H.R. Rept. No. 105–364 (Part 1), at 60–62 (1997), 1998–3 C.B. 373, 432–434. With regard to section 6015(e)(3)(A) (the predecessor to section 6015(g)(1)), the House report stated: "The Tax Court may order refunds as appropriate where it determines that the spouse qualifies for relief and an overpayment exists as a result of the innocent spouse qualifying for such relief." H.R. Rept. No. 105–364 (Part 1), *supra* at 61, 1998–3 C.B. at 433.

levy on the Bank of America account amounted to a "separate payment"[12] by Ms. Minihan. Ultimately, Ms. Minihan's section 6015(g)(1) refund claim is a post-levy assertion of her rights in the levied property and an avenue for her to recover what may belong to her. *See Nat'l Bank of Commerce*, 472 U.S. at 728. Whether we use the terminology from Revenue Procedure 2003–61, *supra* (i.e., identifying "separate payments"), or the more general terminology used in *Nat'l Bank of Commerce*, 472 U.S. at 731 (i.e., "determin[ing] the rights of third parties * * * after the levy is made"), the inquiry is the same. We must determine (1) whether Ms. Minihan in fact had a separate interest in the Bank of America account and, if so, (2) whether that interest, as against the IRS, survived the levy. We turn to Massachusetts State law to answer these questions.

1. *Her separate interest in the joint bank account*

A party to a Massachusetts joint bank account has the power to withdraw, assign, or transfer part or all of the funds in a joint account. Mass. Ann. Laws ch. 167D, sec. 5 (LexisNexis 2009). "Unlike a joint tenant of property held in a traditional joint tenancy, therefore, * * * [a title holder of a joint bank account] may effectively exercise control over the entire interest, or any part of it, and divest, totally or partially, the interest of the other." *Heffernan v. Wollaston Credit Union*, 567 N.E.2d 933, 937 (Mass. App. Ct. 1991); *see also United States v. U.S. Currency, $81,000*, 189 F.3d 28, 34 (1st Cir. 1999) (holding that the rights conferred to a joint account holder by Massachusetts statutes and case law in fact give a joint account holder legal title in a joint account). While a joint bank account establishes the rights of the co-depositors as between them and the bank, it is not conclusive between the parties as to the account's ownership (i.e., the issue of who has equitable title or real interest). *Heffernan*, 567 N.E.2d at 937 n.7. The real interest of each joint

---

[12] The IRS casts the issue in terms of "separate assets" rather than "separate payment", but for our purposes there is no meaningful distinction, because the analysis of whether Ms. Minihan made a "separate payment" turns on whether Ms. Minihan had a distinct legal interest in the bank account as determined under State law. We presume that such an interest would also be a "separate asset". To the extent our conclusion regarding the IRS's terminology is incorrect, then the IRS's use of the term "separate assets" is misplaced, because the only relevant inquiry is whether Ms. Minihan made a "separate payment" that resulted in an overpayment. *See Rosenthal v. Commissioner*, T.C. Memo. 2004–89.

depositor may be determined in an action in equity. *Id.* (citing *Blanchette v. Blanchette*, 287 N.E.2d 459, 462–463 (Mass. 1972)). "The determination of the interest * * * in the deposits in the joint accounts is dependent primarily on what * * * [the] *intention* [*of the parties*] was, and this is a question of fact." *Buckley v. Buckley*, 17 N.E.2d 887, 888 (Mass. 1938) (emphasis added); *see also Campagna v. Campagna*, 150 N.E.2d 699, 702 (Mass. 1958); *Milan v. Boucher*, 189 N.E. 576, 578 (Mass. 1934); *Rafuse v. Stryker*, No. 090107, 2010 WL 2431921, at *6 (Mass. Super. Apr. 21, 2010).

Accordingly, we turn to Mr. and Ms. Minihan's intention regarding the account. The money in the joint account came from the sale of the couple's long-time marital house, in which they had made a home together during almost two decades of marriage. Although the money to pay the mortgage had come from the earnings of Mr. Minihan, his earning potential depended on Ms. Minihan's making her contribution to the household by keeping house, raising the children, and fulfilling the other responsibilities of the stay-at-home spouse.

Most telling, however, is Mr. Minihan's testimony at trial: When asked why, on one occasion when he unilaterally withdrew from the account $5,000 for himself, he also withdrew $5,000 for Ms. Minihan, Mr. Minihan testified: "I did so because it was equitable. That was—if one was going to take out $10,000, the other one would take out $10,000". Mr. Minihan had every incentive in this case to minimize Ms. Minihan's claim on the funds in the joint account, but even his testimony suggests that the parties intended that Mr. and Ms. Minihan each had a 50-percent interest in the account, notwithstanding that the initial source of the funds might be traced to Mr. Minihan's paycheck.

Accordingly, we conclude that under Massachusetts law Ms. Minihan had a 50-percent ownership interest in the joint account.

2. *Her interest's survival of the levy*

Under *Nat'l Bank of Commerce*, the IRS clearly has the right to levy on a delinquent taxpayer's joint bank accounts. Similarly, under Massachusetts law other creditors can

pursue collection of an individual debtor's debts by levying on joint bank accounts held by the debtor and a third party. *Prudential-Bache Sec., Inc. v. Comm'r of Revenue*, 588 N.E.2d 639, 641 (Mass. 1992); *R.H. White Co. v. Lees*, 166 N.E. 705, 706 (Mass. 1929) ("the deposit may be attached in a suit against either depositor"). However, whether the creditor is the IRS or someone else, the inquiry does not end with the creditor's right to attach a joint bank account, because under Massachusetts law nondebtor co-depositors have the right to intervene and assert their ownership interests against those creditors. *See R.H. White Co.*, 166 N.E. at 706; *Laubinger v. Dep't of Revenue*, 672 N.E.2d 554, 557 (Mass. App. Ct. 1996). The propriety of the creditor's levy is one thing; the right of a third party to assert a claim against the creditor for the property it seized is another thing.

In particular, a co-depositor may bring a post-seizure action to establish his rights in seized property and seek a judgment against the seizing creditor for the amount of the joint account that the nondebtor co-depositor owned. *See Colella v. N. Easton Sav. Bank*, No. 95–00362, 1995 WL 670140 (Mass. Super. Sept. 11, 1995); *see also* Mass. Ann. Law ch. 223, sec. 102. In *Colella* the North Easton Savings Bank exercised its right of setoff against a debtor's joint bank account, of which the plaintiffs were co-depositors. After the North Easton Savings Bank took the entire balance of the account by setoff, the nondebtor co-depositor plaintiffs brought an action against the bank alleging, inter alia, the tort of conversion. The Massachusetts Superior Court, in denying North Easton Savings Bank's motion for summary judgment, stated: "In sum, a bank, without the consent of co-depositors, may not unilaterally seize *and retain* funds that may not be actually owned by the individual debtor." *Colella*, 1995 WL 670140 at *5 (emphasis added). Since, under Massachusetts law, North Easton Savings Bank could not retain the funds, the plaintiffs' interest in the account survived the seizure.

We have concluded that Ms. Minihan was the owner of 50 percent of the Bank of America account. After the IRS levied money from the account in order to satisfy Mr. Minihan's tax debt, any interest Ms. Minihan had in the seized money survived under Massachusetts law. *See id.* An available remedy for Ms. Minihan to establish and retrieve her share of the

levied funds is a refund claim under section 6015(g)(1). Ms. Minihan has established her 50-percent interest in the account, and she is therefore entitled under section 6015(g)(1) to a refund of any of her share of the money the IRS seized from the joint account, if and to the extent she is granted relief under section 6015(f).

V. *Conclusion*

The IRS is not entitled to judgment as a matter of law with regard to Ms. Minihan's potential claim for a refund under section 6015(g)(1). As result, there remains for trial the issue of whether Ms. Minihan is entitled to relief under section 6015(f).

To reflect the foregoing,

*An appropriate order will be issued.*