# United States Tax Court

T.C. Memo. 2023-117

SARAH S. O'NAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 5115-17.                                       Filed September 18, 2023.

————

In 2012 P and her husband bought a home in Ohio as joint tenants with right of survivorship, referred to in Ohio as a "survivorship tenancy." *See* Ohio Rev. Code Ann. § 5302.20(A) (LexisNexis 2022). Shortly after the purchase, P's husband took out a loan against the home, evidenced by a promissory note. Later, either P's husband individually or the couple jointly took out an additional loan, evidenced by a second promissory note. The loans were issued by two different banks. P and her husband cosigned two mortgage deeds, each securing payment of one of the loans.

P's husband passed away unexpectedly in 2014 at the age of 43, leaving P destitute, unable to repay the loans, and facing large joint federal income tax liabilities stemming from unpaid amounts reported for tax years 2012 and 2013. P put the home up for sale when she could not stay current on the loan payments. A foreclosure proceeding on the home ensued. In response P dropped the asking price of the home and also filed a request for "innocent spouse" relief under I.R.C. § 6015 as to the joint tax debt. While the innocent spouse relief request was pending, R filed a notice of federal tax lien against P and her deceased husband.

[*2]     P was able to sell the home before foreclosure. In disbursing the proceeds from the sale, the title company covered the closing costs, paid off the primary and secondary mortgagees, remitted $123,200 to the IRS in satisfaction of the joint 2012 and 2013 federal tax liens, and paid the remaining amount to P.

R subsequently granted P partial innocent spouse relief under I.R.C. § 6015(f) for tax year 2012 and full relief for 2013. However, R refused P's request for refund of the $123,200 collected from the home sale. *See* I.R.C. § 6015(g)(1). The IRS took the position that the sale proceeds did not belong to P separately and hence could not constitute an overpayment by P.

*Held*: Because the IRS granted P partial relief from joint liability under I.R.C. § 6015(f) for tax year 2012, we determine that year's tax liability as if P had filed a married-filing-separately return for that year, and her liability is $3,340 plus interest to date of payment. *See Pullins v. Commissioner*, 136 T.C. 432, 440 (2011). For tax year 2013, P was granted full relief and accordingly has no liability.

*Held, further*, under Ohio law, P inherited her late husband's one-half interest in the home subject to the liens against that interest, including the I.R.C. § 6321 lien that the IRS held against that interest.

*Held, further*, given the recalculation of P's liability pursuant to I.R.C. § 6015(f), a portion of the $123,200 IRS payment came from P's separate funds, as that portion was attributable solely to P's original one-half interest in the home.

*Held, further*, in light of the priority of the various liens on the home and P's status as mere surety for some of them, P is entitled to a refund under I.R.C. § 6015(g)(1) of $123,200 less the $3,340 (plus interest to date of payment) for which P remained liable.

————————

[*3] *Harlan S. Louis*, for petitioner.

*Jonathan E. Behrens* and *Richard L. Wooldridge*, for respondent.

### MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, *Judge*: Petitioner, Sarah S. O'Nan, requested "innocent spouse" relief from joint liability with her deceased husband for tax years 2012 and 2013 (years in issue). The Internal Revenue Service (IRS) granted Mrs. O'Nan partial relief for 2012 and full relief for 2013, pursuant to section 6015(f).[1] The IRS also determined that Mrs. O'Nan was not entitled under section 6015(g)(1) to any refund of amounts previously remitted in satisfaction of her and her deceased husband's joint tax liabilities for the years in issue. The sole issue for our decision is whether Mrs. O'Nan made overpayments with respect to the years in issue that would entitle her to a refund under section 6015(g)(1).

### FINDINGS OF FACT

Mrs. O'Nan was married to Jonathan P. O'Nan until his unexpected death on November 25, 2014, at the age of 43. She resided in Ohio when she filed her Petition.

In May 2012 the O'Nans bought a home in Franklin County, Ohio (family home). On June 26, 2012, they recorded a general warranty deed (dated May 23, 2012) with the Franklin County Recorder's Office (recorder's office). The deed conveyed legal title to the O'Nans in joint tenancy with right of survivorship, referred to in Ohio law as a "survivorship tenancy." *See* Ohio Rev. Code Ann. § 5302.20(A) (LexisNexis 2022).

The family home was eventually encumbered by two mortgages, each securing a different loan evidenced by a promissory note. Wells Fargo Bank (Wells Fargo) held the primary mortgage, initially recorded by WCS Lending, LLC, in a deed filed in October 2012 and assigned to

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*4] Wells Fargo in January 2015. First Bexley Bank (First Bexley) held the secondary mortgage, recorded in a deed filed in October 2013. While both Mr. and Mrs. O'Nan signed the two mortgage deeds, only Mr. O'Nan signed the promissory note secured by the primary mortgage (subsequently assigned to Wells Fargo).[2]

The O'Nans jointly and timely filed their federal income tax returns for the years in issue, but they did not pay their reported tax liabilities upon filing. The IRS assessed the reported liabilities for those two years on November 18, 2013, and November 17, 2014, respectively, while Mr. O'Nan was still living. Mr. O'Nan passed away on November 25, 2014. After issuing a notice and demand for each tax year, the IRS filed a notice of federal tax lien (NFTL) against the O'Nans on April 28, 2015, and sent them a notice of NFTL filing that same day.[3] The notice of NFTL filing stated that the O'Nans owed $24,683 and $90,108 for the years in issue, respectively.

On March 11, 2015, Mrs. O'Nan filed a survivorship affidavit with the recorder's office, confirming her sole legal title to the family home pursuant to the survivorship tenancy. However, Mrs. O'Nan stopped making payments on the home loans, leading Wells Fargo to initiate a foreclosure action in the Court of Common Pleas of Franklin County (court of common pleas) on April 2, 2015. In June 2015, while the foreclosure action was pending, Mrs. O'Nan sold the family home for $895,000.

The title company presiding over the sale remitted the following pertinent amounts from the sale proceeds: (1) $423,020 to Wells Fargo in full satisfaction of its primary loan; (2) $257,955 to First Bexley in full satisfaction of its secondary loan; and (3) $123,200 to the IRS in full satisfaction of its tax lien, i.e., the outstanding tax liabilities for the years in issue plus interest and penalties (IRS lien payment). After payment of these amounts and of closing costs of $14,290, Mrs. O'Nan received $76,535. The IRS soon thereafter filed Form 668(Z), Certificate of Release of Federal Tax Lien, with the recorder's office, and Wells Fargo moved to dismiss its foreclosure action against Mrs. O'Nan. The court of common pleas granted that motion on August 27, 2015.

---

[2] The record does not clearly indicate whether Mr. and Mrs. O'Nan cosigned the First Bexley note or whether instead only one of them did so.

[3] The NFTL and notice of same each listed Mr. O'Nan as "JONATHAN P ONAN (DECEASED)."

**[\*5]** Before those payments, on May 6, 2015, the IRS had received from Mrs. O'Nan Form 8857, Request for Innocent Spouse Relief, in which she requested relief from joint liability with Mr. O'Nan for the years in issue. In a final determination letter dated February 13, 2017, the IRS, acting pursuant to section 6015(f), granted Mrs. O'Nan partial relief from joint and several liability for 2012 and full relief for 2013. For tax year 2012 the IRS determined that Mrs. O'Nan remained liable for $3,340.[4] The determination letter also fully denied Mrs. O'Nan's claim for refund of the $123,200 IRS lien payment. In response Mrs. O'Nan timely filed a Petition with this Court, contesting the IRS's determination that she is not entitled to a refund of $123,200.

OPINION

I. *Scope and Standard of Review; Burden of Proof*

In this case we apply a de novo scope of review and de novo standard of review in deciding whether Mrs. O'Nan is entitled to a refund under section 6015(g)(1). *See Porter v. Commissioner*, 132 T.C. 203, 210 (2009). Although Congress recently added section 6015(e)(7) to clarify the scope and standard of review in stand-alone innocent spouse cases, *see* Taxpayer First Act, Pub. L. No. 116-25, § 1203, 133 Stat. 981, 988 (2019), this new provision applies only to petitions filed in this Court on or after July 1, 2019, and thus does not govern this case (which was commenced in March 2017), *see Sutherland v. Commissioner*, 155 T.C. 95, 104 (2020). Mrs. O'Nan bears the burden of proving that she is entitled to a refund. *See* Rule 142(a); *Porter*, 132 T.C. at 210.

II. *Section 6015 Relief*

Generally, married taxpayers may elect to file joint federal income tax returns. I.R.C. § 6013. Section 6013(d)(3) provides that, if a joint return is filed for a particular tax year, each spouse is jointly and severally liable for the entire tax due. A requesting spouse may be relieved from joint and several liability under section 6015 if certain conditions are met. That section provides a requesting spouse with three alternatives for relief from joint and several liability: (1) full or partial relief under subsection (b) (relating to understatements of tax attributable to only one spouse); (2) proportionate relief under subsection (c) (relating to taxpayers who become divorced or legally

---

[4] The $3,340 liability continued to accrue interest from the due date of the original 2012 tax return until payment. *See* I.R.C. § 6601(a).

[*6] separated after filing a joint return); and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f). When a taxpayer is granted relief under section 6015(f), the taxpayer's liability for the relevant year(s) is recalculated as if the spouses had properly filed married-filing-separately returns. *Minihan v. Commissioner*, 138 T.C. 1, 8 (2012); *Pullins v. Commissioner*, 136 T.C. 432, 440 (2011).

Ordinarily, when a requesting spouse invokes our jurisdiction under section 6015(e) to review the IRS's determinations, it is because the IRS has denied that spouse relief under subsection (b), (c), or (f). Here, by contrast, the IRS has already granted Mrs. O'Nan partial relief from joint and several liability under section 6015(f), and she is not contesting the partial denial. Rather, Mrs. O'Nan disputes the IRS's denial of a refund for an alleged overpayment relating to the partial relief that was granted.

III.   *Entitlement to Refund Under Section 6015(g)(1)*

Section 6015(g)(1) provides that, absent certain exceptions, "credit or refund shall be allowed or made to the extent attributable to the application of this section."[5]  However, before any taxpayer is granted a credit or refund, there must be a determination that the taxpayer made an overpayment. *Minihan*, 138 T.C. at 8. A taxpayer makes an overpayment if she (or someone else on her behalf) remits to the U.S. Treasury funds that belonged to her in excess of the tax for which she was liable. *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947); *Minihan*, 138 T.C. at 9.

There is no overpayment for which an innocent spouse may claim a refund unless the payment in question was made from that spouse's separate funds. *See, e.g.*, *Ordlock v. Commissioner*, 126 T.C. 47 (2006) (holding that the taxpayer, although entitled to innocent spouse relief, was not entitled to a refund of joint tax payments made from community property), *aff'd*, 533 F.3d 1136 (9th Cir. 2008); *Kaufman v. Commissioner*, T.C. Memo. 2010-89 (holding that the taxpayer was not entitled to a section 6015(g)(1) refund when the tax liability was paid by

---

[5] The three primary exceptions are as follows: (1) a court has already rendered a judgment on the requesting spouse's eligibility for relief under section 6015; (2) the requesting spouse participated meaningfully in a prior court proceeding where he or she could have (but did not) raise section 6015 relief; or (3) the IRS has granted the requesting spouse relief under section 6015(c) (relating to taxpayers who become divorced or legally separated after filing a joint return). *See* I.R.C. § 6015(g)(2) and (3); Treas. Reg. § 1.6015-1(e). These exceptions are not relevant here.

[*7] her deceased husband's estate). State law determines who owns what property and, therefore, whether a requesting spouse made any tax payments from her separate funds. *See Morgan v. Commissioner*, 309 U.S. 78, 82 (1940) ("[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property . . . ."); *see also United States v. Craft*, 535 U.S. 274, 278 (2002); *Aquilino v. United States*, 363 U.S. 509, 513 (1960); *United States v. Bess*, 357 U.S. 51, 55 (1958).

If a tax payment is made from jointly owned property, the innocent spouse may qualify for a refund if she can trace some or all of the payment to her separate portion of the property. For instance, in *Minihan*, 138 T.C. at 17–18, we held that an innocent spouse was entitled to a refund of the amount levied by the IRS from her and her former husband's joint bank account to the extent the levied funds were traceable to her portion of the account.

IV.     *Federal Tax Liens on Ohio Survivorship Tenancy Property*

Section 6321 imposes a lien in favor of the United States on all of a person's property and rights to property when that person is liable to pay any tax and neglects or refuses to pay that tax after demand. Under section 6322, this lien arises at the time the IRS assesses the liability and continues until the liability is fully satisfied or becomes unenforceable. *See Estate of Brandon v. Commissioner*, 133 T.C. 83, 85 (2009).

The IRS obtained liens on both Mr. O'Nan's and Mrs. O'Nan's undivided one-half interests in the family home immediately upon making its assessment for tax year 2012 on November 18, 2013, and those liens increased in value upon the IRS's assessment for tax year 2013 on November 17, 2014. On November 25, 2014, upon Mr. O'Nan's death, Mrs. O'Nan automatically inherited Mr. O'Nan's one-half interest, *see* Ohio Rev. Code Ann. § 5302.20(B). As we explained in our Order dated June 18, 2020, Mr. O'Nan's death did not affect the IRS's liens. *See Paternoster v. United States*, 640 F. Supp. 2d 983 (S.D. Ohio 2009) (analyzing sections 6321 and 6322 and Ohio law to conclude that, when a cotenant in an Ohio survivorship tenancy dies subject to a section 6321 lien, the surviving cotenant takes the decedent's interest subject to the lien). Thus, Mrs. O'Nan inherited Mr. O'Nan's former interest fully subject to the IRS's lien.

**[\*8]**   As already noted, when a requesting spouse is granted section 6015(f) relief, we recalculate her federal tax liability as if she and her spouse (or deceased spouse) had filed married-filing-separately returns for the relevant years.  *See Pullins*, 136 T.C. at 440.  If Mr. and Mrs. O'Nan had filed married-filing-separately returns for the years in issue, then for tax year 2012 Mrs. O'Nan would have had a liability of $3,340 (the amount for which she was denied section 6015(f) relief) and for tax year 2013 she would have had no liability (as she was granted full relief for that year).  We therefore hold that although the IRS retained a lien on the family home in the full amount of the liabilities for the years in issue, that lien did not encumber Mrs. O'Nan's original one-half interest except to the extent of $3,340 plus interest.

V.    *Attribution of the IRS Lien Payment*

Having determined Mrs. O'Nan's tax liabilities for the years in issue, we must next decide whether any of the IRS lien payment was attributable to Mr. O'Nan's former one-half interest in the family home.[6] If so, that portion was not an overpayment by Mrs. O'Nan because such funds already belonged to the IRS on the basis of its persisting lien on Mr. O'Nan's former one-half interest.  However, if any portion of the payment was attributable to Mrs. O'Nan's original one-half interest and exceeded the $3,340 plus interest for which she remained liable, that portion must be refunded to Mrs. O'Nan under section 6015(g)(1).

In deciding whether any of the IRS lien payment came from Mrs. O'Nan's separate funds, we look to Ohio property law, as "[s]tate law defines ownership interests in property for purposes of [f]ederal tax collections under section 6321."  *See Ordlock*, 126 T.C. at 52.  The default rule for apportioning profits and costs among survivorship cotenants is provided by Ohio Rev. Code Ann. § 5302.20(C)(1):

> Unless otherwise provided in the instrument creating the survivorship tenancy, each of the survivorship tenants has an equal right to share in the use, occupancy, and profits, and each of the survivorship tenants is subject to a proportionate share of the costs related to the ownership

---

[6] Although Mr. O'Nan's one-half interest in fact passed to Mrs. O'Nan immediately upon his death, we can continue to distinguish between the two one-half interests for certain legal purposes relevant here.  *See, e.g.*, *Paternoster*, 640 F. Supp. 2d at 987–92.

[*9]     and use of the real property subject to the survivorship tenancy.

The $895,000 of gross proceeds from the family home sale constituted "profits . . . related to the ownership . . . of the real property." Therefore, these proceeds should be attributed one-half to Mrs. O'Nan's original interest and one-half to Mr. O'Nan's former interest—that is, $447,500 apiece.[7]

Accordingly, there was a total of $447,500 of proceeds attributable to Mr. O'Nan's former one-half interest out of which to satisfy the liabilities encumbering it. Likewise, there was a total of $447,500 of proceeds attributable to Mrs. O'Nan's original one-half interest out of which to satisfy the liabilities encumbering it. These liabilities fell into four categories: the closing costs of the home sale; the Wells Fargo loan; the First Bexley loan; and the federal tax debt. We will now address the amounts of these liabilities (as apportioned between the two one-half interests) and their respective priorities.

A.     *Liability Amounts and Priorities*

1.     *Closing Costs*

The $14,290 of closing costs for the family home sale included (among other things) county property taxes, recording fees, and home warranty charges. Since closing costs are "costs related to the ownership . . . of the real property," half of the closing costs, or $7,145, was attributable to each of Mr. O'Nan's former one-half interest and Mrs. O'Nan's original one-half interest under Ohio Rev. Code Ann. § 5302.20(C)(1).

Ohio courts have interpreted the Ohio statutory scheme for executions against property as providing for a "priority that is given to the costs of sale when property is subject to foreclosure." *White v. Parks*, 2009-Ohio-703 ¶14, 2009 Ohio App. LEXIS 587, at *10–11 (Ohio Ct. App. 2009) (upholding trial court decision giving "payment of the foreclosure costs first priority in distribution of the proceeds following the foreclosure sale"). Therefore, even though the family home sale was not in fact a foreclosure sale, we find by analogy that under Ohio law the various closing costs recipients (such as the recorder's office) held a lien

---

[7] Nothing in the general warranty deed conveying the family home to Mr. and Mrs. O'Nan modified the "proportionate share" default of Ohio Rev. Code Ann. § 5302.20(C)(1).

**[*10]** on the proceeds from the family home sale with priority over both Wells Fargo and First Bexley.

Further, we assume without deciding that all the closing cost lienors held priority over the IRS pursuant to one or more of the exceptions listed in section 6323(b) and (c).[8] We make this assumption because it holds true for at least a substantial portion of the closing costs and because it will not affect our ultimate decision.

2. *Wells Fargo Loan*

The Wells Fargo loan, incurred by Mr. O'Nan, had an outstanding balance of $423,020 at the time of the family home sale. The loan was secured by a mortgage on the family home evidenced by a deed signed by both Mr. and Mrs. O'Nan. While both Mr. and Mrs. O'Nan signed the mortgage deed, Mr. O'Nan alone signed the promissory note to Wells Fargo.[9] The related mortgage deed stipulates that Mrs. O'Nan was "not personally obligated to pay the sums secured by this Security Instrument." Thus, under Ohio law Mrs. O'Nan was merely a surety for Mr. O'Nan's obligation. *See, e.g.*, *Cranberry Fin., L.L.C. v. S&V P'ship*, 927 N.E.2d 623, 627 (Ohio Ct. App. 2010) ("'[A] mortgage given to secure the obligation of a third person is valid and enforceable, and creates a surety relationship between the mortgagor and mortgagee.' 69 Ohio Jurisprudence 3d [(1986) 182, Mortgages, Section 139]." (alterations in original) (quoting *Liberty Sav. Bank F.S.B. v. Sortman*, No. 16532, 1998 Ohio App. LEXIS 1667, at *11 (Ohio Ct. App. Apr. 17, 1998))).

Because Mrs. O'Nan was a surety rather than a principal obligor at the time of the family home sale, Wells Fargo had a lien on Mr. O'Nan's former one-half interest in the first instance, while its lien on Mrs. O'Nan's original one-half interest was residual (i.e., effective only to the extent that Mr. O'Nan's interest yielded insufficient funds). *See Homan v. Michles*, 194 N.E.2d 162 (Ohio Ct. App. 1963) (holding that since wife cosigned note only as surety for husband, husband's creditors

---

[8] For instance, section 6323(b)(6)(A) provides that even after the filing of an NFTL, the IRS's lien generally is inferior to a lien securing payment of local real estate taxes.

[9] The promissory note was originally given to WCS Lending, LLC, which later assigned it to Wells Fargo.

**[*11]** had to exhaust husband's separate collateral before taking from wife's assets).[10]

As to priority, we have already established that the closing cost lienors held priority over Wells Fargo. Furthermore, the record shows that Wells Fargo enjoyed first-in-time priority over First Bexley, by virtue of the Wells Fargo mortgage deed's having been recorded before the First Bexley mortgage deed.

Finally, the Internal Revenue Code indicates that Wells Fargo held priority over the IRS. Section 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) [i.e., an NFTL] has been filed by the Secretary." Section 6323(h)(1) specifies that for purposes of determining priority,

> [a] security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

Since the Wells Fargo mortgage satisfied the two conditions of section 6323(h)(1) before the April 28, 2015, filing of the NFTL against Mr. O'Nan (then deceased) and Mrs. O'Nan, the Wells Fargo mortgage held priority over the federal tax lien. Thus, Mr. O'Nan's loan with Wells Fargo, as secured by a mortgage on the family home, would be repaid from his former interest before the IRS received any of the sale proceeds.

### 3. *First Bexley Loan*

The First Bexley loan had an outstanding balance of $257,955 at the time of the family home sale. The loan was secured by a secondary

---

[10] In the absence of guidance from Ohio courts, we find that Ohio Rev. Code Ann. § 5302.20(C)(1) provides only a default rule for the apportionment of costs (including acquisition costs) among survivorship tenants. Therefore, Mr. and Mrs. O'Nan could and did contract around the "proportionate share" default for the Wells Fargo loan—namely, by designating Mr. O'Nan as the principal obligor and Mrs. O'Nan as a surety only. Similar remarks may apply to the First Bexley loan, discussed below.

[*12] mortgage on the family home and was incurred to pay for an addition to the home. While both Mr. and Mrs. O'Nan signed the mortgage deed, the record does not indicate who signed the promissory note given to First Bexley. However, as we explain below, this uncertainty is not relevant to determining the refund due Mrs. O'Nan under section 6015(g)(1) so long as she was not the sole obligor on the First Bexley loan. We find by a preponderance of the evidence that she was not, given the following two facts: (1) Mr. O'Nan alone signed the Wells Fargo promissory note, which was executed only about a year before the First Bexley promissory note, and (2) Mr. O'Nan was the primary earner in the family. Therefore, given the rulings of *Cranberry Financial* and *Homan*, we find that either the First Bexley loan encumbered Mrs. O'Nan's original interest only residually (pursuant to her status as surety) or it encumbered Mr. O'Nan's interest and Mrs. O'Nan's interest in equal measure.

As to priority, we have already established that the closing cost lienors and Wells Fargo held priority over First Bexley. And as with Wells Fargo, section 6323 establishes that First Bexley held priority over the IRS.

### 4. *Federal Tax Debt*

Finally, all but $3,340 plus interest of the $123,200 federal tax debt for the years in issue encumbered Mr. O'Nan's former one-half interest only, because of the section 6015(f) partial relief granted to Mrs. O'Nan. The remaining $3,340 plus interest continued to encumber both one-half interests at the time of the family home sale.

As established above, the IRS held the lowest priority among the creditors holding an interest in the family home.

### B. *Calculation of Overpayment*

Given our determination of the liability amounts, their apportionment between the two one-half interests, and their respective priorities, we can now calculate whether any portion of the IRS lien payment was attributable to Mrs. O'Nan's separate funds.

The first $7,145 of the $447,500 of proceeds attributable to Mr. O'Nan's former interest properly belonged to the closing cost lienors. Then, $423,020 of the remaining $440,355 belonged to Wells Fargo. This left $17,335 for both First Bexley and the IRS. Whether the $257,955 First Bexley debt fell proportionately or only residually on

**[*13]** Mrs. O'Nan's original interest (that is, whether Mrs. O'Nan cosigned the First Bexley promissory note or did not sign it at all), the First Bexley loan absorbed the full remaining portion of the proceeds attributable to Mr. O'Nan's former interest.

Therefore, the $123,200 IRS lien payment, less the $3,340 plus interest for which Mrs. O'Nan remained liable, could have come only from Mrs. O'Nan's unencumbered separate funds. Under section 6015(g)(1), she must be refunded all but $3,340, plus interest, of the IRS lien payment.

VI.    *The Parties' Arguments*

The Commissioner points out that the federal tax lien attached, in the first instance, to both Mr. O'Nan's and Mrs. O'Nan's one-half interests in the family home and that (per our earlier Order) it was unaffected by Mr. O'Nan's death. Therefore, the Commissioner concludes, Mrs. O'Nan had a right to only that portion of the net proceeds of the family home that remained after deducting the full value of the federal tax lien along with the other liabilities. In consequence, the Commissioner asserts, none of the IRS lien payment was made from Mrs. O'Nan's separate funds.

The Commissioner is correct that Mr. O'Nan's death did not affect the nature of the section 6321 lien. However, he overlooks the fact that Mrs. O'Nan's relief under section 6015(f) effectively excused her from all but $3,340 (plus interest) of the tax liabilities for the years in issue. Because of that fact, all but $3,340 (plus interest) of the IRS lien payment was made from funds belonging to Mrs. O'Nan, as the IRS was entitled to only $3,340 (plus interest) of the proceeds attributable to Mrs. O'Nan's original one-half interest.

Mrs. O'Nan contends that her refund should consist of the entire $123,200 IRS lien payment. However, the IRS denied Mrs. O'Nan relief for $3,340 of the 2012 tax liability, and Mrs. O'Nan has neither contested that denial nor presented evidence that she satisfied that portion of the liability other than with the family home proceeds. Therefore, her refund must be reduced by $3,340 plus interest to date of payment.

We have considered all arguments made by the parties and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

**[\*14]**  To reflect the foregoing,

*Decision will be entered under Rule 155.*