T.C. Summary Opinion 2019-5

UNITED STATES TAX COURT

JIM STUART BROOKS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20779-16S.                     Filed March 18, 2019.

Jim Stuart Brooks, for himself.

<u>Tammie A. Geier</u> and <u>J. Craig Young</u>, for respondent.

SUMMARY OPINION

GUSTAFSON, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463[1] in effect when the petition was filed.  Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986 (26 U.S.C., "the Code") as amended and in effect for the
relevant years, and all Rule references are to the Tax Court Rules of Practice and
                                                        (continued...)

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case arises from petitioner Jim Stuart Brooks's request for "innocent spouse" relief from joint liability under section 6015(f) for the years 2003 and 2006. The Internal Revenue Service ("IRS") did not grant Mr. Brooks's request for relief. Mr. Brooks filed a petition with the Court, asking this Court to provide relief to him under section 6015(f).

The parties jointly moved to submit this case for consideration pursuant to Rule 122, reflecting their agreement that the relevant facts could be presented without a trial, and we granted that motion.[2] We hold that Mr. Brooks failed to establish that he is entitled to equitable relief under section 6015(f).

## Background

At the time Mr. Brooks filed his petition, he resided in South Carolina. His wife, Mrs. Brooks, the nonrequesting spouse, was provided notice of her right to intervene pursuant to Rule 325(a) and King v. Commissioner, 115 T.C. 118

---

[1](...continued)
Procedure.

[2]The burden of proof is generally on the taxpayer, see Rule 142(a), and the submission of a case under Rule 122 does not alter that burden, see Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

(2000), but she declined to do so; as a result, she is not a party to this case. Sec. 6015(e)(4); Rule 325. The record[3] establishes the following facts.

Mr. Brooks's Marriage

Mr. and Mrs. Brooks were married and not separated when they filed their 2003 and 2006 joint income tax returns and when Mr. Brooks filed the petition in this case. Mr. Brooks has not alleged any abusive, illegal, fraudulent, coercive, or deceitful behavior by Mrs. Brooks.

Mr. and Mrs. Brooks's finances

During 2003 and 2006, Mr. Brooks worked for mortgage companies. In 2003 Mr. Brooks earned $7,599 and Mrs. Brooks earned $5,517, for a total income of $13,116. In 2006 Mr. Brooks earned $61,446 and Mrs. Brooks earned $12,995, for a total income of $74,441. That is, Mr. Brooks earned about 83% of their joint

_____

[3]The parties agree that the record consists of the facts alleged in: (1) the Commissioner's motion for summary judgment filed on July 11, 2017; (2) petitioner's response and cross-motion for summary judgment filed on August 4, 2017; (3) the Commissioner's reply filed on August 11, 2017; (4) petitioner's reply filed August 21, 2017; (5) this Court's order dated August 29, 2017, to the extent that the parties agreed that its factual recitation accurately summarizes the undisputed facts, with the exception that petitioner's nonrequesting spouse earned income from additional sources and not only from Social Security benefits; and (6) the Commissioner's motion (to which petitioner consents) to submit the case pursuant to Rule 122, filed on September 1, 2017, which contains the parties' stipulations as to the amounts of income earned by petitioner and his nonrequesting spouse during the years at issue.

2006 income, and Mrs. Brooks earned about 17%. Mr. and Mrs. Brooks filed joint tax returns for 2003 and 2006. The Brookses' income declined significantly after 2006.

While Mr. Brooks did not offer into evidence any records or financial information (except for proof of Mrs. Brooks's 2006 Social Security benefits and rounded, unsubstantiated amounts of income and expenses), there is no evidence of lavish spending by Mr. and Mrs. Brooks.

Mr. Brooks's health

Mr. Brooks has two serious medical conditions, one of which affects his vision. We find credible his claims that this condition does not disable him but "detracts from [his] quality of life, movement[,] and employment opportunities involving reading".

The Brookses' 2003 and 2006 tax liabilities

On May 6, 2004, the Brookses filed their return for their 2003 tax year and did not pay the tax owed or the additions to tax under section 6651(a), which at that time totaled less than $1,000. (However, the IRS eventually determined that on November 7, 2016, the period of limitations for the collection of Mr. Brooks's 2003 unpaid Federal income tax liability had expired, and the IRS wrote off as uncollectible the then-remaining unpaid balance of $581.)

For their 2006 tax year, Mr. and Mrs. Brooks timely filed a six-month extension request and made a $1,000 payment on April 15, 2007. On October 18, 2007, they filed their 2006 return and were thereafter assessed tax of $8,558. Mr. Brooks described his 2006 income as "a bumper absolutely un-expected good year" and as "the year that really produced my tax problems". Mr. Brooks stated that when the 2006 return was filed, he knew that the balance of the tax liability would not be paid because he did not have any money. Less than three months later, on December 22, 2007, Mr. and Mrs. Brooks entered into an installment agreement with the IRS for their 2006 tax liability. The IRS's Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters", shows that after entering into the installment agreement, Mr. Brooks made only one $50 payment that was applied to the 2006 liability. In view of that fact, combined with Mr. Brooks's admission that he did not have the money to pay the tax when due and with the fact that his income significantly declined after 2006, we find that Mr. Brooks probably knew, at the time he entered into the installment agreement, that he was unable to make the payments called for by the agreement. The IRS terminated the installment agreement on December 7, 2009.

Subsequent returns

Mr. Brooks and his nonrequesting spouse have been in compliance with their tax filing obligations for all of the taxable years following 2006.

Mrs. Brooks's bankruptcy proceeding

Mrs. Brooks filed a petition in the U.S. Bankruptcy Court for the District of South Carolina. Mr. Brooks did not do so. In 2014 Mrs. Brooks's Federal income tax liabilities for 2003 and 2006 were discharged by order of the bankruptcy court. As a result of Mrs. Brooks's bankruptcy discharge, the IRS created separate accounts for Mr. Brooks and Mrs. Brooks.

Collections and requests for relief

On May 1, 2013, the IRS applied an overpayment credit of $86 from the Brookses' 2002 tax year in partial satisfaction of their 2003 liability. On April 15, 2014 and 2015, the IRS applied additional overpayment credits of $660 and $364 from their 2013 and 2014 tax years in partial satisfaction of Mr. Brooks's 2003 liability.[4]

---

[4]It appears that some of the payments were made outside of the lookback period of section 6511 (discussed below in part II.C.1), so Mr. Brooks would not be entitled to a refund for those payments. We are unsure of the dates of the payments (made when the IRS credited overpayments from other periods), because the dates reflected on the IRS's records reported on a Form 4340 may be deemed dates or effective dates that differ from the actual dates on which the IRS

(continued...)

In 2015 Mr. Brooks submitted an offer-in-compromise proposing to pay $8,081, which he claims was the sum of his 2003 and 2006 tax liabilities, without penalties and interest. Mr. Brooks claims that he made that offer with the intention of paying it with an inheritance he had received after his father's death, "basically paying over one half of the tax, interest and penalties due". The IRS rejected that offer-in-compromise by a letter dated March 9, 2016, that explained, inter alia, that it rejected his offer because it was less than his reasonable collection potential and that, on the basis of financial information Mr. Brooks had submitted, the IRS determined that he could pay the amount due in full. Since the IRS rejected his offer-in-compromise in March 2016, he has used a portion of the inheritance to pay living expenses as his income continued to decline.

Mr. Brooks appealed the IRS's rejection of his offer-in-compromise and requested relief from joint and several liability in the event that appeal was denied. The IRS's Appeals Office responded with a Letter 5197, dated August 25, 2016, which sustained the IRS's denial of Mr. Brooks's offer-in-compromise but did not address his request for relief from joint and several liability.

---

[4](...continued)
performed the accounting entries to apply the overpayment credits. However, for the purposes of our discussion, this distinction is unnecessary since we hold on other grounds that Mr. Brooks is not entitled to a refund.

Tax Court petition

On September 21, 2016, Mr. Brooks filed a petition with this Court, disputing (according to the face of the petition) a notice of determination concerning his request for relief from joint and several liability for 2003 and 2006 and asking that this Court reduce his liabilities by half because of his wife's bankruptcy discharge. At the time Mr. Brooks filed his petition with this Court, the IRS had designated his 2006 account balance of $13,496 "currently not collectable."

On November 10, 2016, the Commissioner filed a motion to dismiss for lack of jurisdiction. By order dated January 31, 2017, we found that the Court had jurisdiction under section 6015(e).

The issue for decision is whether Mr. Brooks is entitled to equitable relief under section 6015(f).

## Discussion

I. Standard and scope of review

Congress provided this Court express authority to review the IRS's denial of equitable relief under section 6015(f), granting jurisdiction "to determine the appropriate relief available to the individual under this section".
Sec. 6015(e)(1)(A). When determining whether a taxpayer is entitled to relief

under section 6015(f), our "scope" of review is de novo, and we may consider

evidence introduced by the parties that was not included in the administrative

record.  Porter v. Commissioner ("Porter I"), 130 T.C. 115, 117 (2008).  For all

claims under section 6015 (including claims for equitable relief under section

6015(f)), we do not review the IRS's determination for abuse of discretion but

instead employ a de novo standard of review.  Porter v. Commissioner

("Porter II"), 132 T.C. 203, 210 (2009).  Except as otherwise provided in section

6015, the taxpayer bears the burden of proof.  See sec. 6015(c)(2); Rule 142(a);

Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir.

2004).

II.    Joint and several liability and section 6015 relief

       A.    General principles

       Section 6013(d)(3) provides that if a joint return is filed, the tax is computed

on the taxpayers' aggregate income, and liability for the resulting tax is joint and

several.  See also 26 C.F.R. sec. 1.6013-4(b), Income Tax Regs.  That is, each

spouse is responsible for the entire joint tax liability.

       Section 6015 provides for relief from joint liability for spouses who meet

the conditions of subsection (b) and for divorced and separated persons under

subsection (c); and it provides equitable relief in subsection (f) when the relief

provided in subsections (b) and (c) is not available. Mr. Brooks and the

Commissioner agree that he is not entitled to relief under section 6015(b) or (c).

Accordingly, Mr. Brooks requests relief under section 6015(f), and we analyze his

eligibility under subsection (f).

Subsection (f) of section 6015 provides as follows:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed
> by the Secretary, if--
>
> (1) taking into account all the facts and circumstances, it
> is inequitable to hold the individual liable for any unpaid tax or
> any deficiency (or any portion of either); and
>
> (2) relief is not available to such individual under
> subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

Thus, a taxpayer may be relieved from joint and several liability under section

6015(f) if, taking into account all the facts and circumstances, it is inequitable to

hold the taxpayer liable.

B.      Equitable relief under Rev. Proc. 2013-34

In accord with the statutory provision that section 6015(f) relief is to be

granted "[u]nder procedures prescribed by the Secretary," the IRS has issued

regulations that guide IRS employees in determining whether a requesting spouse

is entitled to relief from joint and several liability. See 26 C.F.R. sec. 1.6015-4(c),

Income Tax Regs. (incorporating Rev. Proc. 2000-15, 2000-1 C.B. 447, superseded and modified by Rev. Proc. 2003-61, 2003-2 C.B. 296, superseded and modified by Rev. Proc. 2013-34, 2013-43 I.R.B. 397). Rev. Proc. 2013-34 sets forth, in three sections, the factors the IRS uses to determine whether a taxpayer is entitled to equitable relief. Id. sec. 1.01, 2013-43 I.R.B. at 397. The Court consults those same factors when reviewing the IRS's denial of relief (but is not confined to them). See Washington v. Commissioner, 120 T.C. 137, 147-152 (2003).

Section 4.01 of Rev. Proc. 2013-34 provides seven threshold conditions that the taxpayer must satisfy to be eligible for relief under section 6015(f). If the taxpayer qualifies under section 4.01, then the taxpayer may be afforded equitable relief under section 4.02 or 4.03. Section 4.02 sets forth conditions under which the IRS determines whether the taxpayer is entitled to a streamlined determination. If the taxpayer satisfies the threshold conditions of section 4.01 but does not qualify under section 4.02 for a streamlined determination, then the requesting spouse can still be considered for relief under the equitable factors of section 4.03. We evaluate Mr. Brooks's claim as to 2006 in the light of these conditions and factors in part III.B below.

C.    Section 6015(g) refund relief

When a taxpayer seeks innocent spouse relief under section 6015(f), the relief comes in the form of being excused from joint and several liability for the joint tax due.  Where the IRS has already collected the tax (or collected some amount of the total tax liability), the taxpayer may request a refund under section 6015(g)(1).  See Minihan v. Commissioner, 138 T.C. 1, 8 (2012). Section 6015(g)(1) allows this Court to determine whether a taxpayer is eligible for a credit or refund.

1.    Claim for refund

Section 7422(a) provides:  "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax * * * until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." (Emphasis added.)  Thus, the general rule is that a taxpayer must file an administrative claim before he can sue for a refund.  However, section 6015(g) provides that credits or refunds shall be allowed or made to an innocent spouse to the extent attributable to the application of section 6015, "notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122)". (Emphasis added.)

Thus, for a taxpayer litigating an innocent spouse claim, the "notwithstanding" provision of section 6015(g)(1) may excuse him from some procedural requirements in the Code; but the "other than" provision makes clear that section 6511 will continue to operate. Section 6511 requires that a claim for credit of a tax overpayment "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid" and then limits the amount of credit or refund to payments made within two "look back" periods. Sec. 6511(a) and (b) (emphasis added). Consequently, the section 6015(g) parenthetical reference to section 6511 preserves, in the instance of the innocent spouse request, the requirement that a taxpayer must file an administrative claim for refund.

Mr. Brooks did not file a formal claim for refund--neither on Form 1040, "U.S. Individual Income Tax Return", nor on Form 1040X, "Amended U.S. Individual Income Tax Return", see 26 C.F.R. sec. 301.6402-3(a)(1) and (2), Proced. & Admin. Regs.; see also Dixon v. United States, 7 Cl. Ct. 377 (1985), nor on the form promulgated by the IRS for requesting relief under section 6015, Form 8857, "Request for Innocent Spouse Relief",[5] see 26 C.F.R. sec.

_____

[5]In part VII of the form ("Tell us if you would like a refund"), line 31 reads: "By checking this box and signing this form, you are indicating that you would

(continued...)

1.6015-5(a), Income Tax Regs.  However, where the Commissioner has waived the formalities of the regulations, see United States v. Kales, 314 U.S. 186 (1941), the requirement of an administrative claim may be satisfied by an "informal claim".  As we explained in Palomares v. Commissioner, T.C. Memo 2014-243, at *9, rev'd on other grounds, 691 F. App'x 858 (9th Cir. 2017), the failure to use the correct form "does not automatically preclude * * * [a taxpayer's claim] from meeting the requirements of an 'informal claim' for refund based on relief from joint and several liability if it provides the Commissioner with the salient information about the taxpayer's claim."

The regulation authorizing Form 8857 explicitly contemplates a taxpayer's filing for innocent spouse relief using documents other than Form 8857.  26 C.F.R. sec. 1.6015-5(a), Income Tax Regs. ("a requesting spouse must file Form 8857, 'Request for Innocent Spouse Relief' (or other specified form); [or] submit a written statement containing the same information required on Form 8857" (emphasis added)).  The relevant inquiry for discerning the adequacy of an

---

[5](...continued)
like a refund if you qualify for relief and if you already paid the tax. See instructions."  The instructions for line 31 specify:  "You must indicate that you want a refund of any payments you made in order for the IRS to consider whether you are entitled to it.  Payments include refunds from another tax year applied to this tax liability."

informal claim is "whether, under all the facts and circumstances, petitioner gave sufficient notice of the basis for his refund claim to respondent so that respondent could investigate the claim and make a determination on the merits." Palomares v. Commissioner, at *10-*11 (quoting Jackson v. Commissioner, T.C. Memo. 2002-44, slip op. at 11). We held, in a case where the taxpayer "requested tax refunds with interest for each of the [relevant] years * * * in a letter she attached to the Form 8857", that "a request for relief under section 6015 encompasses a request for refund of tax to the extent permitted under section 6015." See Washington v. Commissioner, 120 T.C. at 162.

### 2. Existence of overpayment

Before any taxpayer can be allowed a refund or credit--here, a refund arising from overpayment credits applied to Mr. Brooks's 2003 tax year--there must be a determination that the taxpayer has made an overpayment. Ordlock v. Commissioner, 126 T.C. 47, 69 (2006) (Thornton, J., concurring), aff'd, 533 F.3d 1136 (9th Cir. 2008). A taxpayer makes an overpayment if he remits funds to the Secretary in excess of the tax for which he is liable. Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947) (defining an overpayment as "any payment in excess of that which is properly due"); see also Minihan v. Commissioner, 138 T.C. at 9. To prove that he has made an overpayment, the requesting spouse must establish that

he (and not the nonrequesting spouse) provided the funds for the overpayment.

Minihan v. Commissioner, 138 T.C. at 9 (citing Rosenthal v. Commissioner, T.C.

Memo. 2004-89); Rev. Proc. 2013-34, sec. 4.04, 2013-43 I.R.B. at 403.

In part III.A below, we briefly evaluate Mr. Brooks's claim of a refund for

2003 in light of these principles.

III.   Analysis of Mr. Brooks's request for relief

A.   Analysis of Mr. Brooks's refund claim for 2003

We conclude that Mr. Brooks's section 6015(g) claim for refund cannot

prevail.  It seems doubtful whether our holding in Washington v. Commissioner,

120 T.C. 137, could support a holding of an adequate informal claim in a case like

this one, where the taxpayer's letter does not include the word "refund" nor

mention any overpayment of tax.[6]  However, even assuming that he did adequately

claim a 2003 refund, Mr. Brooks did not establish that he (and not Mrs. Brooks)

provided the funds that were the source of the overpayments emanating from

2002, 2013, and 2014 that were applied to the 2003 tax year.  See Ordlock v.

_____

[6]See Commissioner v. Ewing, 439 F.3d 1009, 1015 (9th Cir. 2006), vacating 122 T.C. 32 (2004) and rev'g 118 T.C. 494 (2002), where the Court of Appeals for the Ninth Circuit distinguished Washington v. Commissioner, 120 T.C. 137 (2003)--and found no adequate informal claim--because "Ewing's statement attached to her Form 8857 merely stated that her tax liability was zero.  By contrast, the taxpayer in Washington specifically requested tax refunds with interest for each of the tax years in question."

Commissioner, 126 T.C. at 69 (Thornton, J., concurring). The record shows that the amounts that constituted any arguable overpayment for 2003 were overpayment credits from other years that the IRS applied to 2003; but the record is silent as to which spouse made the payments that resulted in those overpayments. Mr. Brooks had the burden to prove that he had made those payments, and he did not carry that burden.

We therefore need not consider his 2003 refund claim further, and we focus the remaining analysis on his request for relief from joint and several liability for his 2006 tax year.

B.    Analysis of Mr. Brooks's equitable contentions as to 2006

1.    Section 4.01:  Threshold conditions

As we summarily stated above, a taxpayer must satisfy seven threshold conditions before the IRS will consider a request for equitable relief. See Rev. Proc. 2013-34, sec. 4.01. Those conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly

participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse's income.  Id.

The Commissioner admits that Mr. Brooks satisfies the first six threshold conditions.  The Commissioner originally denied that the liability from which Mr. Brooks seeks relief is attributable to income earned by Mrs. Brooks but, in view of the stipulation that Mrs. Brooks earned 17% of the joint income, now agrees that a portion of the liability is attributable to her.

As to the portion of the liability attributable to the 83% of the joint income that was earned by Mr. Brooks himself, we see no equitable argument in favor of relieving him from joint liability.  He would have been liable for the tax on that 83% portion of the income if he had not filed a joint return.  His liability for that tax was not dependent on section 6013(d)(3), and he is not eligible for relief under section 6015(f).  We therefore consider further only the possibility of Mr. Brooks's being relieved from joint liability for the portion of the tax attributable to Mrs. Brooks's income--i.e., 17% of the total income.  For purposes

of this opinion, it will suffice to make the approximation[7] that the tax attributable to Mrs. Brooks's income is 17% of the total tax--i.e., $17\% \times \$8,558 = \$1,455$.

Thus, we assume that for approximately $1,455 of the joint liability, Mr. Brooks satisfies all seven of the IRS's threshold conditions, and we continue with the analysis.

### 2.      Section 4.02:  Streamlined determination

Section 4.02 of Rev. Proc. 2013-34 sets forth the conditions under which the IRS will make streamlined equitable relief determinations.  Both parties agree this section does not apply, so analysis of this section is unnecessary.

### 3.      Section 4.03:  Equitable relief

Where, as here, a requesting spouse satisfies the threshold conditions of Rev. Proc. 2013-34, sec. 4.01, but fails to qualify for streamlined relief, the IRS may still grant equitable relief if, taking into account all the facts and

---

[7]In Pullins v. Commissioner, 136 T.C. 432, 440 (2011), the "IRS's computation * * * made a pro rata allocation of the reported liability (based on married-filing-jointly status)", whereas the Court instead severed relief into shares by computing the taxpayer's liability for tax on her own earnings "on the basis of married-filing-separately status".  The record in this case lacks sufficient detail to enable us to calculate precisely Mr. Brooks's individual liability in that manner, since neither party produced evidence of the return in question.  However, since, for the reasons explained below, we conclude that Mr. Brooks is not entitled to relief even as to the tax attributable to Mrs. Brooks's income, we need not come to a precise calculation of the tax attributable to Mrs. Brooks's income.

circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See Rev. Proc. 2013-34, sec. 4.03. Section 4.03(2) provides the following nonexclusive factors the Commissioner takes into account when determining whether to grant equitable relief: (a) marital status, (b) economic hardship, (c) knowledge or reason to know, (d) nonrequesting spouse's legal obligation, (e) significant benefit, (f) compliance with Federal tax laws, and (g) mental or physical health. We consider these factors and any other relevant facts and circumstances in determining whether the taxpayer is entitled to "innocent spouse" relief. No single factor is determinative, and all factors are to be considered and weighted appropriately. Olson v. Commissioner, T.C. Memo. 2009-294, slip op. at 22 (citing Haigh v. Commissioner, T.C. Memo 2009-140).

### (a)     Marital status

Mr. and Mrs. Brooks were married and were not separated when Mr. Brooks requested innocent spouse relief and when he filed the petition in this case. This factor is neutral. Rev. Proc. 2013-34, sec. 4.03(2)(a).

### (b)     Economic hardship

Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses, and the IRS evaluates income, assets and liabilities, age, ability to earn, responsibility for

dependents, the amounts reasonably necessary for basic living expenses, the allowable living expenses for his geographic area, and other factors. Butner v. Commissioner, T.C. Memo. 2007-136, slip op. at 30-31, 30 n.14 (2007); 26 C.F.R. sec. 301.6343-1(b)(4), Proced. & Admin. Regs. (incorporated into Rev. Proc. 2013-34 by Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B at 401). Mr. Brooks had the burden to prove that the expenses qualify as basic living expenses and that they are reasonable. See Monsour v. Commissioner, T.C. Memo. 2004-190. Section 4.03 of the Revenue Procedure also instructs IRS agents to compare the requesting spouse's income to Federal poverty guidelines and also consider his assets in determining whether the requesting spouse would suffer economic hardship if relief were not granted. Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401.

The Commissioner acknowledges that Mr. Brooks is an elderly man with diminished earning capacity. While Mr. Brooks argues that this factor favors relief, he failed to introduce sufficient evidence of his alleged income and expenses to substantiate his claims of economic hardship. Mr. Brooks has the burden of proof, and on this record, his unsubstantiated, rounded estimates of categorical descriptions of assets, income, and expenses do not prove that he will suffer economic hardship if relief is not granted. Therefore, this factor is neutral.

(c)    Knowledge or reason to know

In the case of an income tax liability that was properly reported but not paid, consideration is given to whether as of the date the return was filed the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after the filing of the return.  Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii) and (iii), 2013-43 I.R.B. at 401, 402.

Mr. Brooks knew about the income reported on the return he signed; and he admits he knew the resulting tax liability would not be paid since he did not have the money to make the payment.

An exception exists in underpayment cases:

> A reasonable expectation of payment will be presumed if the spouses submitted a request for an installment agreement to pay the tax reported as due on the return.  To benefit from the presumption, the request for an installment agreement must be filed by the later of 90 days after the due date for payment of the tax, or 90 days after the return was filed * * * and it must not be unreasonable for the requesting spouse to believe that the nonrequesting spouse will be able to make the payments contemplated in the requested installment agreement.

Id. sec. 4.03(2)(c)(ii).  The record reflects that Mr. Brooks entered into an installment agreement on December 22, 2007, within the 90-day post-filing deadline.  However, we have found that Mr. Brooks knew, at the time he requested

the installment agreement, that he and his wife would be unable to make the required payments and that he had a high degree of involvement in the activities that generated their income tax liability. See id. sec. 4.03(2)(c)(ii) and (iii). Therefore, this factor weighs against granting relief.

### (d) Nonrequesting spouse's legal obligation

Rev. Proc. 2013-34 states:

> This factor will weigh against relief if the requesting spouse has the sole legal obligation. The fact that the nonrequesting spouse has been relieved of liability for the taxes at issue as a result of a discharge in bankruptcy is disregarded in determining whether the requesting spouse has the sole legal obligation. This factor will be neutral if * * * the spouses are not separated or divorced * * * .

Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. Accordingly, we disregard the discharge of Mrs. Brooks's liability in bankruptcy, and Mr. Brooks's continuous marriage to Mrs. Brooks results in our finding that the factor of legal obligation is neutral.

### (e) Significant benefit

Under the "significant benefit" factor, we examine whether the requesting spouse directly or indirectly significantly benefited from the unpaid income tax liability or understatement. Id. sec. 4.03(2)(e), 2013-43 I.R.B. at 402 (citing

26 C.F.R. sec. 1.6015-2(d), Income Tax Regs.).  Rev. Proc. 2013-34, sec.

4.03(2)(e), describes a "significant benefit" as--

> any benefit in excess of normal support.  For example, if the
> requesting spouse enjoyed the benefits of a lavish lifestyle, such as
> owning luxury assets and taking expensive vacations, this factor will
> weigh against relief.  * * * If the amount of unpaid tax or
> understatement was small such that neither spouse received a
> significant benefit, then this factor is neutral. Whether the amount of
> unpaid tax or understatement is small such that neither spouse
> received a significant benefit will vary depending on the facts and
> circumstances of each case.

The parties agree that Mr. Brooks did not receive a significant benefit from the

unpaid tax liability, nor is there any indication of lavish spending.  Accordingly,

this factor favors relief.[8]

### (f)    Compliance with income tax laws

This factor considers whether the requesting spouse has made a good-faith

effort to comply with the income tax laws in years following the year for which

relief is requested.  If the requesting spouse remains married, is tax compliant, and

still files joint returns with the nonrequesting spouse, then this factor is neutral.

However, if the requesting spouse remains married, and is tax compliant, but files

---

[8]When considering this factor, this Court has declined to follow Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. 397, 402, which prescribes finding this factor as neutral in instances when there is no significant benefit.  See, e.g., Boyle v. Commissioner, T.C. Memo. 2016-87, at *16.

a separate return from the nonrequesting spouse, then this factor weighs in favor of relief. See id. sec. 4.03(2)(f)(ii) and (iii), 2013-43 I.R.B. at 402, 403.

Both parties agree that Mr. Brooks and his wife are in tax compliance for subsequent years. Mr. Brooks argues that this factor weighs in favor of relief, but he failed to provide evidence that, or even to explicitly state that, he has filed tax returns separately from his wife. Accordingly, we find that this factor is neutral.

(g)     Mental or physical health

"This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the return or returns for which the request for relief relates were filed * * * or at the time the requesting spouse requested relief", Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403, or "at the time of the trial", Pullins v. Commissioner, 136 T.C. 432, 454 (2011), or when, as here, the case is submitted to the Court under Rule 122.

Mr. Brooks provided documentation showing that he has been diagnosed with two serious medical conditions. At least one of those illnesses, while not disabling, affects his ability to earn a living. Therefore, this factor weighs in favor of granting relief.

(h)    Additional facts and circumstances

As was noted above, the Court considers the factors provided by Rev. Proc. 2013-34, supra, as guidelines but is not confined to them, and we note the following additional facts:  First, Mr. Brooks describes 2006 as "a bumper absolutely un-expected good year" (with respect to income) and acknowledges that 2006 "is the year that really produced my tax problems".  Implicit in these statements is the fact that Mr. Brooks failed to set aside money from these unusually good earnings to pay the tax liability associated with their "bumper" year.  Second, he also admits that he inherited money that he could have used to pay a significant portion of his tax liability but that he chose not to after the IRS rejected his offer-in-compromise.  Third, if a very large liability is at issue, it may be more likely that imposing the crushing burden on an innocent spouse is inequitable; but the relatively small amount of Mrs. Brooks's portion of the liability (approximately $1,455) does not cry out for relief in the same way.  These facts weigh against granting relief.

We considered other arguments that Mr. Brooks advanced--such as "Governmental abuse of a Procedural Remedy" and "Collusive Acts of Government that Deprive a Taxpayer of a Substantive Legal Right"--but they do

not affect our determination whether a taxpayer is entitled to equitable relief under section 6015(f).

4.  Weighing the factors

Four factors favor retained liability: Mr. Brooks lacked a reasonable expectation that the liability would be paid when he signed the 2006 return (and when he later entered into the installment agreement); he failed to prepay or set aside tax money during a "bumper year"; he chose to live off his inheritance rather than paying the liability; and Mrs. Brooks's approximate share of the liability is relatively small. Four factors are neutral (marital status, economic hardship, legal obligation, and subsequent tax compliance). Only two factors weigh in favor of granting relief--Mr. Brooks's physical health and the lack of significant benefit.

After considering and weighing all the factors, we hold that Mr. Brooks is not entitled to section 6015(f) equitable relief from joint and several Federal income tax liability for the 2006 tax year.

To reflect the foregoing,

Decision will be entered for respondent.